# WEST MISSOURI LAND COMPANY v. THOMPSON, Appellant.

### Division One, June 30, 1900.

1. **Ejectment: INSTRUCTION: EFFECT OF PAPER TITLE.** Whether the land was in existence at the time riparian land was patented to plaintiff's ancestor or has been formed since as accretions thereto, it is not error to instruct the jury that plaintiff has the record title to the land if in fact his deeds cover the land in controversy and show he has a clear title to the riparian land. Such instruction does not destroy defendant's claim of title by adverse possession.

2. ——: ——: **FOREIGN ISSUES: ACCRETIONS: AVULSION.** Where the whole issue in the case is whether the land was an accretion formed by dumping earth from the river bank, or was in existence at the time the near-by riparian land was patented and hence was embraced within the description of plaintiff's deeds, it was not error to refuse an instruction which leaves out of view the hypothesis that the land may have arisen out of the bed of the river.

Appeal from Jackson Circuit Court.—*Hon. Jno. W. Henry,* Judge.

AFFIRMED.

*Amos H. Kagy* and *J. H. Bremermann* for appellant.

(1) In instruction numbered 1, given at the instance of plaintiff, the court told the jury that plaintiff had shown by the deed and title papers introduced in evidence that it was the owner of the record title from the United States government down to the present time, of the land north of lots 9, 10 and 11, including the land described in the petition. This was error. Reese v. McDaniel, 115 Mo. 145; Cooley v. Golden, 117 Mo. 33. (2) The court erred in refusing in-

struction numbered 5 requested by the defendant. It is the received law that the line of the owner of real estate bordering on a navigable stream shifts with the meander line of the stream; that where all of the land of the original owner is washed away it is gone forever, and if an island rises upon the bed of the stream within the original boundaries by alluvion or by an avulsion, the land thus formed, though it afterwards attaches to the bank, does not belong to the original owner. These are fixed principles of law. Benson v. Morrow, 61 Mo. 345; Naylor v. Cox, 14 Mo. 232; Cox v. Arnold, 129 Mo. 337; Perkins v. Adams, 132 Mo. 131; Hahn v. Dawson, 134 Mo. 581. There is strong evidence to the effect that the site of this strip was river bed. (3) The first instruction given by the court at the instance of plaintiff was wrong for another reason. That instruction told the jury that the plaintiff had made out a record title to the land in controversy. There was other evidence that while there may have been land at one time where the land in controversy now is, yet such land had washed away and the defendant filled in upon the river bed. In either case such instruction was bad. The court had no right to assume, on behalf of plaintiff, the truth of a fact disputed by defendant, and instruct the jury that it had been proven.

*H. M. Meriwether* for respondent.

(1) Under this evidence, it was entirely proper for the court to declare that the plaintiff has shown a record title to the property. This instruction was qualified by other instructions on the questions of riparian rights and accretions, as will appear from the reading of the instructions. (2) Appellant objects to the ruling of the court in refusing instruction numbered 5 requested by the defendant. By this instruction, the defendant requested the court to declare

that if he had filled in the river bed with earth and formed said land by filling, then they must find for the defendant. This overlooks the point that if such filling were made to the bank owned by the plaintiff, the land would belong to the plaintiff, although it might have been filled by the defendant.

VALLIANT, J.—This is an action of ejectment for a strip of land lying on the south bank of the Missouri river within the corporate limits of Kansas City. The petition is in the usual form and the answer is a general denial. The evidence showed paper title of record in the plaintiff. The defendant's effort was to show title by adverse possession. The land in controversy is a small strip embraced within a considerable tract covered by the plaintiff's deeds. This tract was owned by the West Kansas City Land Company, from whom or rather from whose trustees plaintiff purchased. That company, while it owned the tract, platted upon a part of it an addition to Kansas City. There was a strip between the part platted and the river, which was not included in the plat. The following diagram was in evidence showing the part platted, and that unplatted, and showing the land in suit which is designated by heavy lines.   (See next page.)

The evidence on the part of defendant tended to show that he moved on lots 9, 10 and 11 of the plat in 1877, and that at that time the river at high water washed against and under the K. C. & Ft. Scott railroad, shown on the plat, though at low water the river ran within its banks somewhat north of the railroad, that defendant began dumping earth and filling in at that point on those lots, and by that means and by the river deposits the land was made and extended out to where the river now is, as shown on the plat, and that defendant has all the while been in possession, claiming it as his own.

Missouri River

River Bank

K.C. St. Joseph & Belt R.R.

Landin Centennary

BLK 14
W. Kim Add

Barile Fe Street

12 13 14 15 16 17

alley                    alley

1 2 3 4 5 6 7 8 9 10 11

K.C.F.S. & B.R.R.

alley        BLK. 15

Mulberry Street

N    S    E    W

On the part of the plaintiff the evidence tended to prove that there was a considerable strip of land north of the platted lots between the railroad and the river at the time the railroad was built in 1874 of which the defendant had never had possession and of which the land in suit is a part. That as to lots 9, 10 and 11 defendant's possession was only permissive as a tenant of Dr. Fitzpatrick, and not adverse, and that he moved on to the land in suit only a short while before the suit was begun.

At the request of the plaintiff the court gave the following instructions:

"1.   The court instructs the jury that the plaintiff has shown by the deeds and title papers introduced in evidence that it was the owner of the record title from the United States government to date, of the land north of the north line of lots 9, 10 and 11, block 15, West Kansas addition number 1, up to the Missouri river, including the land described in the petition.

"2.   The court instructs the jury that if they find from the evidence that the plaintiff, or those under whom it claims, owned a strip of land north of the north track of the Fort Scott & Gulf and just south of and adjoining the land in controversy in this case, which strip was occupied by William Sexton and Charles Martin, or others, none of whom claimed any title in the land, and who did not occupy the same as the tenant of any other person claiming adversely to the plaintiff, or those under whom it claims, then the possession and occupancy of said Sexton, Martin, or others, is the possession of the plaintiff, or those under whom it claims.

"3.   If you find from the evidence that when the West Kansas City Land Company platted an addition to the city of Kansas of the land purchased by said company, patented to Philebar, it did not include in said plat a strip of land north of the north line of said addition, lying between the

addition and the Missouri river, and that the parcel of land in dispute was made by deposits from the Missouri river, or by dirt and other material dumped by defendant alone or by defendant and others, plaintiff is entitled to recover in this action, unless you find that defendant has been in the actual, adverse, open and notorious and continuous possession of said parcel of land for a period of ten years next preceding the date of the institution of this action, or had been in such possession of the strip of land between lots 9, 10 and 11 (if you find that there was such a strip of land), to which the parcel of land in controversy has been added either by deposits from the Missouri river or by dumping and filling as above mentioned; and it is not necessary that he should have occupied said strip of land in person for that length of time, but it is sufficient if it was occupied by his tenants, or other persons occupying the land as his agents.

"You are instructed that although you should find that defendant was in the actual possession of lots 9, 10 and 11, that of itself did not carry the possession of the land, if any, outside of the boundaries of those lots; and in order to acquire a title by limitation to that land, he must have been in the open, adverse and continuous possession of said strip of land for the period of ten years before the commencement of this suit; and if you find that he had been so in possession of said strip, then the parcel of land in controversy is his, however made.

"4.   The court instructs the jury that if they find from the evidence that the plaintiff built fences on or around the land described in the petition and rented said land, or any portion thereof, to tenants who occupied the same, these acts constitute possession by the plaintiff."

And of its own motion the court gave the following:

"2.   If the jury find and believe from the evidence that the defendant Thompson has been since the year 1877 or

1878 in the continuous, open and notorious possession of the lots numbered 9, 10 and 11, in block 15, of West Kansas addition number 1, *and the land immediately north of them,* either by himself or his tenants, has had the same fenced during that time, with houses or shanties situate upon the same, claiming the whole tract and exercising *acts of and claiming* ownership over said land; that while so in possession thereof and exercising acts of ownership thereover, if you so find, he commenced to fill out the north end of said lots and did fill out toward and into the river until they included the land in controversy, and that the land in controversy is on the former bed of the Missouri river *and* that the land in controversy is land made or added to said lots 9, 10 and 11, *and the land immediately north of them* by defendant Thompson, while said defendant has been in possession of said lots and land and exercising acts of ownership thereover, if you so find, then your verdict must be for the defendant.

"3.    The court instructs the jury that if you find and believe from the evidence that the land in controversy was made by *accretions* to the property of Dr. Fitzpatrick, *or* to the land of any other person except plaintiff corporation, then your verdict must be for the defendant."

To all of which the defendant duly excepted. The instructions 2 and 3 given as of the court's own motion, were asked by the defendant without the words in italics, which were added by the court. Defendant asked a number of instructions which were refused, but complaint is made of refusing only one, which is:

"5.    If the jury believe from the evidence that the land in controversy was at one time a part of the bed of the Missouri river over which steamboats passed; that defendant filled said river bed with earth at said points and formed said land by such fill, then your verdict must be for the

defendant, although you may also believe from the evidence that plaintiff's grantors at one time had title thereto."

There was a verdict for plaintiff for possession and one cent damages, and judgment accordingly, from which defendant appeals. The only assignments for error relate to the instructions given and refused.

I.   The objection urged against the first instruction is that it declared that plaintiff has the record title to the land north of lots 9, 10 and 11, up to the river, including the land sued for.

That it was the duty of the court to declare the legal effect of the deeds is not questioned, but the complaint is that the court declared that this land is included in the land called for in those deeds, instead of leaving that as a question of fact for the jury.   The plaintiff's record title from the Government called for riparian land, and according to the plats in evidence, both of plaintiff and defendant, it embraced this land, in fact, if it was in existence at the date of the patent; and embraced it in legal contemplation, if it afterwards grew by accretion to the land covered by the patent. The defendant's testimony, as well as the plaintiff's, shows this and the argument of counsel for appellant assumes it. The argument being that whereas it was originally a part of the land covered by the patent, yet it had been washed away by the river and formed again as an accretion to lots 9, 10 and 11.   In that view of the case it was proper for the court to instruct the jury that according to the face of the deeds, the plaintiff had the title to the land in suit, and that is as far as the instruction goes.   It does not direct a verdict for the plaintiff on that title, but proceeds to unfold the defendant's side of the case in other instructions, and directs a verdict for defendant, in spite of the plaintiff's paper title, if the jury find the facts to be as defendant says they are.

II.   The next point advanced is that the court erred in

the third instruction.   This instruction is to the effect that if when the plat was made there was a strip of land left between the platted lots and the river, and the land in suit has been made by deposits from the river or dumping, it is the plaintiff's land unless the facts are found which give defendant title by possession.   It is urged that the instruction leaves out of view the hypothesis that the new made land may have arisen out of the bed of the river, in which event it is insisted upon the authority of Cox v. Arnold, 129 Mo. 337, it would not be an accretion to the plaintiff's land.   An instruction is misleading and confusing if it is not restricted to the facts in the case or the evidence tending to show the facts.   There was nothing in this case to suggest the possibility that this land arose out of the bed of the river.   The whole force of the defendant's own evidence is to show that it was formed chiefly by dumping earth which he himself did from the river bank; he claims it as an accretion to the bank, and his evidence shows that it was an accretion to the strip lying between the platted lots and the river if there was such a strip, or it was an accretion to the platted lots themselves, if there was no such strip, whilst the plaintiff's testimony tends to show that the land was as it now is, with but little increase, in 1874, before the defendant's occupancy of the lots began.

III.   The complaint that the court refused the fifth instruction asked by defendant proceeds on the same theory of the objection to the third instruction given.   It is in effect that if where this land is was once the river bed, over which steamboats passed, and the land was formed by defendant's dumping earth into the river and thus grew up from the bed of the river, independent of the bank, it became defendant's land, notwithstanding that in time past plaintiff's grantors may have owned land there which had washed away.   In support of that proposition the learned counsel cite Benson v. Morrow, 61 Mo. 345; Naylor v. Cox, 114 Mo. 232; Cox v.

Arnold, 129 Mo. 337; Perkins v. Adams, 132 Mo. 131 and Hahn v. Dawson, 134 Mo. 581. To the same effect are the more recent cases of Moore v. Farmer, 156 Mo. 33 and McBain v. Johnson, 155 Mo. 191.

But as above shown, there is no evidence in this case tending to prove that the land arose out of the bed of the river, independent of the bank, and defendant's own evidence is to the contrary. The instruction was properly refused.

Those are the only points assigned for error by appellant, and they are untenable.

The instructions given by the court of its own motion, which are modifications of instructions asked by the defendant (and there is no complaint of those modifications in the brief of appellant), present the defendant's side of the case fairly to the jury, and direct a verdict in his favor if the facts are found to be as he claims, but the jury did not so find.

There is no error in the record, and the judgment is affirmed.

All concur.