# McBAINE v. JOHNSON, Appellant.

## Division One, March 14, 1900.

1. **Accretion: CHANNEL OF RIVER: COUNTY BOUNDARIES.** As the channel of the Missouri river changed, by the gradual dropping of the river southward, the county boundaries bordering on the river were also changed. So that if "made" lands were formed north of the middle of the main channel, over that part of the river bed that formerly lay south of the middle of the main channel, but which now by the gradual dropping of the river further and further south, is north thereof, the said lands lie in the county lying north of the river.

2. ——: **FINDING OF FACTS: CONTRADICTIONS.** In an ejectment for "made" lands, tried by the court without a jury, the court's second finding was "that the land was an accretion;" and in the third it was stated that the patent from the county vests the land in plaintiff "if the same was not an accretion to the main shore, but was formed as an island in the bed of the river by the recession of the waters" from the original shore. *Held*, there is no conflict in these findings: the first finds a fact, and the other declares the law if the fact be otherwise.

3. ——: **EJECTMENT: PLAINTIFF'S INCONSISTENT POSITIONS.** The instructions asked and given declared plaintiff was entitled to judgment if the lands were accretions, and if they were not accretions but an island, he was entitled to recover anyhow as the patentee of the county, which was empowered by law to sell such island. *Held*, that these were not inconsistent positions for plaintiff to take in an ejectment suit, for they were simple assertions of title from two sources, both higher than defendant's squatter right.

4. **Title Where Lands are Accretions.** Where lands are accretions to the shore or surveyed lands, their title is not in the county, nor in the State nor in the United States, and never was, but in the riparian owner.

5. **Accretions: INTERVENING SLOUGH.** Between the main land and the "made" lands in suit there was a low place or slough which in times of high river is covered by water from seven to twelve feet deep, but at other times cattle cross to graze on the lands beyond,

and also through this slough at a time of heavy rains and high river, the waters of a creek flowed for a time, but when the river subsided, the creek's waters assumed its former channel below the lands in suit; otherwise, the lands were formed by the gradual extension of the shore further and further, until it had assumed a position far beyond the lands in suit. *Held*, that they were accretions.

Appeal from Boone Circuit Court.—*Hon. John A. Hockaday*, Judge.

AFFIRMED.

*Odon. Guitar, Jas. C. Gillespy, W. H. Truitt, Jr.*, and *F. M. Brown* for appellant.

(1) The testimony of all the witnesses in the case, who claim to have any knowledge of the re-formation of the land in question, including the plaintiff, shows that such re-formation commenced out in the river, south of the original main channel, in the shape of bars, or tow-heads, which gradually increased in size and elevation, approaching the north and south shores of the river until a large body of land was formed including that in question, separated from the William Smith land and its accretions, by the channel, slough or depression which all the witnesses testify has always existed and still exists between said lands. Under the facts thus conclusively established, even if the channel or slough mentioned had ceased to be navigable (which the great preponderance of the testimony shows is not a fact) the line between the lands of plaintiff's grantors, and the land in question would be the center of said slough, or the line where the last thread of water existed. The proposition enunciated is not only in consonance with equity and the whole law of accretion, but it is too well settled as a rule of property in this State to be questioned or controverted. Buse v. Russell, 86 Mo. 209; Naylor v. Cox, 114 Mo. 232; Hahn v. Dawson, 134 Mo. 581; Rees v. McDaniel, 115 Mo. 145; Perkins v. Adams, 132 Mo. 131; Cooley v. Golden, 117 Mo.

McBaine v. Johnson.

33. (2) There having been at all times since the Government survey in 1817 a navigable channel between the lands of plaintiff's grantors and the land in question, he could acquire no title by "accretion." To constitute such navigable channel it is only necessary that it should contain sufficient water to enable steam boats, or other craft to pass through it at certain seasons. Crandall v. Smith, 134 Mo. 633; Cooley v. Golden, 117 Mo. 33; Cox v. Arnold, 129 Mo. 337; Perkins v. Adams, 132 Mo. 131.

*Ev. M. Bass* and *W. M. Williams* for respondent.

(1) The suit was properly brought in Boone county. The middle of the main channel of the Missouri river constituted the boundary line between Boone and Moniteau counties. The river gradually, and by imperceptible degrees moved south, and this land was first formed north of the middle of the main channel. There was no evidence of avulsion. R. S. 1889, secs. 2956, 3035; Nebraska v. Iowa, 143 U. S. 359; Rees v. McDaniel, 115 Mo. 152; Vogelsmeyer v. Pendergrast, 137 Mo. 286. Precisely the same state of facts in regard to the county boundaries existed in Naylor v. Cox, 114 Mo. 232, and Cox v. Arnold, 129 Mo. 337. (2) Plaintiff had the right to rely upon any title he might have. He could not be compelled to elect between two sources of title. The question to be determined was his right to the immediate possession of the land, and any evidence showing such right was competent. It was entirely legitimate for him to insist that the land sued for was an accretion to the north bank, and that he should recover on his deeds from the owners of the tract to which he asserted that this was an accretion, but if the court should find that the tract sued for was a part of the old river bed, and not an accretion, he was still entitled to judgment by virtue of the conveyance from Boone county. St. Louis Public Schools v. Rissley, 28 Mo. 415. (3)

Vol. 155 mo—13

There was certainly evidence tending to establish plaintiff's theory that the land sued for was an accretion to the north bank of the Missouri river, and that the slough which, at the time of the trial, separated it from said north bank, was formed by the action of Perche creek, which overflowed and forced its way across this ground to the river in May, 1890, and that prior to that time the land sued for was connected with the Smith, or Gilmore and Carter land on the north bank. The declarations of law upon the subject of accretions, given by the court on part of the plaintiff and defendant showed that the case was tried upon a correct theory of the law. The trial judge found as a fact that the land sued for was an accretion to the tract on the north shore. It is useless to cite authorities to show that where a cause is tried before the court, and there is evidence to support the finding of fact made by that court, and proper declarations of law are given, there is nothing for this court to review. It will not pass upon the weight of the evidence. (4) The land sued for was formed against the north bank, gradually and imperceptibly, by the action of the river; then it was an accretion to the land upon said bank, and the plaintiff was entitled to recover. Benne v. Miller, 149 Mo. 228; Naylor v. Cox, 114 Mo. 232; Benson v. Morrill, 61 Mo. 505; Cooley v. Golden, 117 Mo. 33.

MARSHALL, J.—This is an action of ejectment to recover possession of 65.67 acres of land in Boone county. The plaintiff bases his right to recover upon three grounds, to-wit: first, that the land is an accretion to land patented to William Smith, from whom he acquired title by mesne conveyances; second, that the land is an island in the Missouri river, and that he acquired title thereto by a patent from Boone county under the Act of 1895; and, third, prior possession accompanied by acts of ownership, which is good as

against the defendant, who is a mere squatter or trespasser. The answer is a general denial.

The case was tried by the court, without the aid of a jury, and at the request of the defendant the trial court made a special finding of facts as follows:

"First. That the land in controversy lies north of the main channel of the Missouri river, and is in Boone county.

"Second. That said land is an accretion to the main shore of the Missouri river and the lands contiguous thereto now owned by plaintiff through a chain of title beginning with William Smith the original patentee from the United States.

"Third. That the conveyance of Boone county to plaintiff vests him with the title to the disputed land, if the same was not an accretion to the main shore, but was formed as an island in the bed of the river, by the recession of its waters towards its south bank."

At the request of the plaintiff the court gave the following instructions:

"1. If the court shall find from the evidence that the plaintiff's grantors, Marion Gilmore and Robert Carter, the parties under whom he claims, were in possession of the land described in the petition, using it as a pasture, and exercising acts of ownership over it, and claiming title thereto as an accretion to their land, and it was an accretion to their land, and that afterwards the defendant, without the consent of plaintiff's grantors, and without any claim of title, entered upon said land and was at the time of the institution of this suit and still is in possession of same, the plaintiff is entitled to recover upon said prior possession and title of his grantors, and the court will so find.

"2. If the court shall find from the evidence that, at the time of the institution of this suit, the defendant was and still is in possession of the land described in the petition; and shall further find that said land in controversy was, by

the action of the Missouri river, in gradually abandoning its old channel, and running further south, imperceptibly, and from time to time, added to the north bank of the Missouri river against the land patented by the United States to William Smith and the accretions thereto, then the deeds read in evidence passed the title to the land described in the petition to plaintiff, and the finding must be in his favor.

"3.    If the court shall find from the evidence that the defendant was at the time of the institution of this suit and still is in possession of the land described in the petition, and that said land was not formed to and against the north bank of the Missouri river, but in the former bed of said river, and not connected with either bank, but was formed by the river abandoning its old bed and its waters receding therefrom, and running south of its former channel, leaving this land sued for in said abandoned bed of the river, then the deed or patent from Boone county to the plaintiff passed to him the legal title to said land and the finding must be in his favor."

At the request of the defendant the court gave the following instructions:

"4.    If the land in controversy and the lands of plaintiff's grantors were surveyed and platted by the Government in 1817, and subdivided into separate tracts, and situated on opposite shores of the Missouri river, and have continued so separated by a navigable channel of said river up to the date of bringing this suit, then the ownership and possession of said lands claimed by plaintiff's grantors on the north shore of said river, could constitute no color of title to the lands in question, and plaintiff can not recover in this action under a claim of constructive possession in plaintiff and his grantors.

"5.    The land in question was not formed by the recession and abandonment by the waters of the old bed of the Missouri river, and the county of Boone has acquired no title

thereto, and has not and could not convey any title to the plaintiff.

"6.   The State of Missouri has no title to the land in question, and has conveyed none to the county of Boone.

"7.   The Federal Government has no title to the land in question, and has conveyed none to the State of Missouri.

"8.   There was no testimony adduced in this cause tending to show title in the Government to the land in question, after the same was surveyed and patented.

"9.   There is no testimony in this cause tending to show title in the State of Missouri to the land in controversy derived from the Federal Government."

The court refused to give an instruction in the nature of a demurrer to the evidence, and also refused to give four other instructions asked by defendant numbered 2, 3, 13 and 14.   Those numbered 2 and 13 were exact duplicates, as were also those numbered 3 and 14.   But instead thereof the court of its own motion gave two instructions on the same questions raised by the instructions refused, and which differed from those asked by the defendant only as to the portions embraced in the brackets and italicised, as follows:

"2.   If it is shown by the evidence that there is and has been [continuously] since the land in question was surveyed in 1817, a navigable slough or channel [of the Missouri river] between the land claimed and occupied by plaintiff's grantors, and the land in controversy, then plaintiff can not recover said land, or any part thereof as an accretion to the lands of plaintiff's grantors.

"3.   The ownership and possession by Gilmore and Carter, plaintiff's grantors, of the land on the north shore of the Missouri river, opposite the land in question, if there is [and has continuously been] a navigable slough or channel of the Missouri river between said shore land and the land in question, constituted no possession, actual or constructive,

in said Gilmore and Carter, and their quitclaim deed to the plaintiff vests no title in him in said land."

The court also refused to give the following instructions asked by the defendant:

"10.   There is no testimony in this cause tending to show title in Boone county to the land in controversy, derived from the State or Federal Government.

"11.   The land in controversy, and no part thereof, is situated within the county of Boone, and this court has no jurisdiction to hear and determine the issues joined in the cause.

"12.   In this cause there is no testimony tending to show that plaintiff, or those under whom he claims, had the actual, open, adverse, exclusive and continuous possession of the land in question for a period of ten years before the institution of this suit, and before defendant's entry upon said land."

The court found for the plaintiff and defendant appealed.

The defendant contends, first, that the court erred in giving the instructions for the plaintiff because there is no testimony in the case that the land sued for is an accretion to the land patented to William Smith; because said land was never granted by the United States to the State of Missouri nor by the State to Boone county; second, that the court erred in the finding of facts (and "of law" as defendant styles it) and that such finding is inconsistent with the instructions given for the defendant, particularly the fifth, sixth, seventh, eighth and ninth; third; that the court erred in modifying and giving the thirteenth and fourteenth instructions asked by the defendant; and, fourth that the court erred in refusing to give instructions ten, eleven and twelve asked by defendant.

It is necessary therefore to review these contentions in detail.

It is conceded that the United States had a survey made in 1817, and thereafter patented to various parties, William Smith among them, all the land on both sides of the Missouri river. At that time the waters of the river covered the land here in controversy as well as much more to which this is claimed to be an accretion. The thread of the main channel of the river was then north of where this land now lies, and the water covered the land. Perche creek, stated on that survey to be a navigable stream, emptied into the Missouri river quite a distance north of this land and from the intersection the river flowed southeast. The middle of the main channel of the river is the dividing line between Boone and Moniteau counties. There was no avulsion, but gradually and imperceptibly the river moved towards the south and this land formed north of what was formerly the middle of the main channel and there are now over ninety-eight acres of land lying between this land and the north bank of the river as it now is. As the river receded towards the south it washed away lands on the south side of the river—the Moniteau county side. About 1873 this land (and the larger tracts referred to) commenced to appear above the water or to form. Between this land (and the ninety-eight acres to the south of it), and the larger tracts referred to as accretions to the Smith grant, which lie to the north and west of this land there was low land, or a slough as some of the witnesses call it, which in times of high water is covered by water from seven to twelve feet deep (this land is also submerged at such times) but at other times cattle cross to graze on this land. The river receded to the south as stated, but Perche creek continued to flow in the same direction the river formerly flowed and along the same lines, and that creek now bounds this land on the northeast. During a season of heavy rains in May, 1890, Perche creek forced its way through the slough or over the low lands and between this land and the land north of it, and temporarily found its way to the river

by this route, but as soon as that temporary stress upon the creek was removed, it flowed again in its channel, and such was the condition in 1896 and when this case was tried.

The plaintiff claims title by mesne conveyances from Smith, the patentee of the United States, if this land is an accretion. His deed is dated September 21, 1896. Prior thereto, and prior to the time defendant took possession, his grantors had used this land for pasturage, had cut willows off of it, and exercised other acts of ownership. The defendant has no title whatever. He took possession of it in 1894, and says that plaintiff's grantors told him at that time that they had no claim to it, and even gave him logs to build a cabin on it, but those grantors deny this and say they told him they would lease the land to him. He however has built a small cabin on the place and has lived there with his family, and exercised acts of ownership over it and claims it adversely. The plaintiff also claims title to the land, if it is island and not an accretion, by virtue of a patent from Boone county, which he claims the county had a right to give under the Act of 1895. (Laws 1895, p. 207.)

If this land is an accretion to the land patented to Smith, the plaintiff, as Smith's grantee, is clearly entitled to it. True the location of this land is at a point which in 1817, when the United States Survey was made, was within the boundary of Moniteau county, because it was then south of the thread or middle of the main channel of the river. But as the channel of the river changed, so the dividing line between Boone and Moniteau counties necessarily changed. [St. Louis v. Rutz, 138 U. S. 1. c. 245.]

And this property thus fell within the boundaries of Boone county, as the court below properly held. The United States having ceded to Smith the land lying on the bank of the river, when the river receded and this land was thereby formed it became an accretion to the Smith land.

The Supreme Court of the United States, in St. Louis

McBaine v. Johnson.

v. Rutz, *supra*, said: "It is laid down by all the authorities, that, if an island or dry land forms upon that part of the bed of a river which is owned in fee by the riparian proprietor, the same is the property of such riparian proprietor. He retains the title to the land previously owned by him with the new deposits thereon."

In Hardin v. Jordan, 140 U. S. 371, the Supreme Court of the United States held that "grants by the United States of its public lands bounded on streams and other waters, made without reservation or restriction, are to be construed, as to their effect, according to the law of the State in which the lands lie. It depends upon the laws of each State to what extent the prerogative of the State to lands under water shall extend." It was further pointed out in that case that it was held in Barney v. Keokuk, 94 U. S. 324, "that it is for the several States themselves to determine this question, and that if they choose to resign to the riparian proprietor rights which properly belong to them, in their sovereign capacity, it is not for others to raise objections." In the Hardin case it is further pointed out that the right of the States to regulate and control the shores of tide waters and the land under them is the same as that which is exercised by the Crown in England, and that in some of the States the same rule is applied to the navigable lakes and to the Mississippi, Missouri, Ohio and other navigable rivers.

In Cooley v. Golden, 117 Mo. 33, the majority of this court followed the rule laid down in Benson v. Morrow, 61 Mo. 347, that the riparian owner only owns to low water mark, and that the title to the land constituting the bed of the Missouri (or other navigable river) is in the State, and hence that the State and not the riparian owner has title to an island that springs up in the river, and that if there is an accretion to the island the State owns the land accreted, and the riparian owner does not. BRACE, J., in a vigorous and most persuasive opinion dissented from the opinion of the

court, and contended that the riparian owner owns to the centre of the stream and not merely to low water mark, and hence he is the owner of any island that springs up on his side of the river.

The majority opinion (p. 51), however, said: "It is apparent from these decisions that when the United States relinquished its rights to the soil under the waters of the Missouri river, it was intended that the States in their sovereign capacity should succeed to all the rights so relinquished. We are not aware of any legislation in this State disposing of the land under the waters of its navigable rivers or of relicted land from sudden changes in the channel. Whether those whose lands have been taken by changes of the bed of the rivers should be compensated from the relicted lands is a question for the determination of the legislative department of the State. We can only say now that the ownership of land in this State is subject to such changes as may be wrought by the natural action of the waters of the navigable rivers upon it."

The case before the court then was a case of avulsion, while the case at bar is one of gradual and imperceptible change.

The result in this case must be the same under the opinion of the majority or of the minority in the Cooley case. For if this was an accretion then the plaintiff, as the riparian owner, is entitled to it, and if it is an island, then he as such riparian owner is entitled to it if he owns to the middle of the stream, and if he only owns to low water mark, and the title to the island is in the State, then he is entitled to it because under the Act of 1895 (Laws 1895, p. 207), the State transferred its title to the county of Boone, and that county patented the land to the plaintiff. The Act of 1895 was manifestly passed in consequence of what was said in the Cooley case in 1893, about there being no law in this State conveying the State's right to such islands to any one.

McBaine v. Johnson.

The findings of fact by the trial court were based upon evidence sufficient to support them and so far as they state conclusions of law they were correct. There is no inconsistency, as is claimed, between the second and third findings. The second finding is that the land is an accretion. The third finding is that the patent from Boone county vests the title to this land in the plaintiff, "if the same was not an accretion to the main shore, but was formed as an island in the bed of the river, by the recession of its waters towards its south bank." The second finds a fact; the third declares the law *if* the fact be otherwise than as found. The result in both cases is the same.

The instructions given for the plaintiff predicated a right of recovery in case the land is an accretion, and if it was not an accretion but an island, then upon the patent from Boone county under the Act of 1895. This was not an inconsistent position for the plaintiff to take in an ejectment suit, for it simply asserted title from two different sources, both higher than defendant's title, and claimed a right to recover under the one which the court should find to be the true title. Both titles went back to the United States for their origin and basis, and both or either entitled the plaintiff to a judgment as against the defendant's mere naked possession for a space of time short of the period of limitation.

Neither is there any inconsistency between the third finding and defendant's instructions numbered four, five, six, seven, eight and nine. These instructions in effect declare that the land in question was not changed from the south of the middle of the main channel to north of the river bed by avulsion, nor is it an island, and therefore the boundary line between Moniteau and Boone counties changed with the change of the river, "and that the waters themselves constitute the real boundary." [Hardin v. Jordan, 140 U. S. l. c. 380; Nebraska v. Iowa, 143 U. S. 359; Cooley v. Golden, 117 Mo. l. c. 43, 44; Naylor v. Cox, 114 Mo. l. c. 243; Cox v.

Arnold, 129 Mo. l. c. 341; Vogelsmeier v. Prendergast, 137 Mo. l. c. 288.]

For these reasons the court properly found that the land lies now in Boone county. It follows as declared by these instructions that neither the government of the United States, nor the State of Missouri nor Boone county had title to this land, but that being an accretion to the land patented by the United States to Smith, the plaintiff is now the owner of it. These instructions declare the legal effect of the evidence, while the third finding declares the law if the facts were otherwise.

The fifth instruction given for the defendant covers the proposition embraced in defendant's tenth instruction refused. Hence there was no error in refusing it. The eleventh instruction asked by defendant was properly refused as the court had found as a fact that the land lies in Boone county. The twelfth instruction was properly refused because there was no such issue in the case. Plaintiff was not relying upon title by limitation but simply asserting the doctrine of prior possession accompanied by acts of ownership to defeat defendant's possession as a trespasser.

There was no error in the modification by the court of defendant's second and third instructions. This is easily demonstrated. Originally the point now covered by this land was in the river and south of the middle of the main channel of the river. Of course the riparian owner of the opposite shore had then no title to this part of the bed of the river. If the channel of the river continued to be at the same place, such riparian owner could not become the owner of this land that became raised above the level of the water. But the fact is undeniable that the channel of the river for many years has not only left the old bed but is south of this land and that between this land and the north bank of the river there is another tract of ninety-eight acres. It appeared that in 1890, by reason of freshets Perche creek flowed over

the low land between this land and the land of the plaintiff to the north of it (it also overflowed this and such other land too) and that it was navigable, but this condition was only temporary, and as soon as the rain water was carried off, Perche creek resumed its former flow on the northeast side of this land. But it must be remembered that this was Perche creek flowing over this low land, or slough as defendant calls it, to join the Missouri river, and it was not the Missouri river at all, for the north bank of that river had been for a long time a great distance south and west of this land and of this low land or slough. In fact the defendant could not justly be heard to complain if the court had refused the second and third instructions on the ground that there was no substantial evidence to base them on.

The defendant is a mere squatter or trespasser and has been accorded by the trial court the fullest rights ever given to any defendant in an ejectment suit. The plaintiff has been, properly, required to recover upon the strength of his own title, without any regard being had to the weakness of the defendant's claim. The testimony amply supports the facts found and there is no error in the instructions which can possibly be said to be prejudicial to the defendant. The judgment of the circuit court is not only for the right party but is the only judgment which the facts and the law warranted, and it is therefore affirmed. All concur, except *Robinson, J.*, absent.