## CHINN v. NAYLOR, Appellant.

### Division One, June 20, 1904.

1. **APPELLATE PRACTICE: New Theory on Appeal: Issues of Fact.** A general demurrer can not be used for the purpose of injecting into a case in the appellate court questions that were not in some way specifically called to the attention of the trial court. The appellant having tried his case on the theory that respondent was the owner of the shore land to which he claimed the land in question was an accretion, can be heard in the appellate court only on the same theory.

2. **ACCRETIONS: Substantial Evidence: Question for Jury.** Where there was substantial evidence to show that the land in suit was formed as an island, between which and the shore the waters of the river continued for some years to run, as claimed by one party, and also to show that the land was a reliction to the shore land with its subsequent accretions, as claimed by the other, the court properly submitted the cause to the jury to decide the point.

3. ————: **Conveyances.** A deed which describes the shore land and conveys "all accretions and riparian rights belonging to said land" sufficiently describes the accretion.

Appeal from Howard Circuit Court.—*Hon. John A. Hockaday,* Judge.

AFFIRMED.

*Sam C. Major* for appellant.

(1) At the close of plaintiff's case the defendant offered the following demurrer: "The court instructs the jury that under the law and the evidence your verdict must be for the defendant," which was refused. I earnestly contend that the same should have been given. The plaintiff must show title in itself, and must recover, if at all, on the strength of his own title, and unless the evidence tended to show the land was his, there was nothing to submit to the jury. He attempted to prove the land had an accretion to his shore land and utterly failed to do so. Plaintiff claims the land as an accretion to the land he purchased from John White and wife. Plaintiff swears that the land was made up to the main land, but in reply to a question on cross-examination, states that the first time he ever saw the land was in 1886 or 1887. In reply to question, "When was it you first saw this very land in controversy here?" answered, "About winter of 1887. I remember that a young man was shot over there on the island, and I went over there to see him." He swore also that he had only known the land 8 or 10 years. So his statement as to how it was formed is utterly of no value; for, according to his own statements, he never saw the land until six years after it had formed, and such being the case his statement can only go to show how it was the first time he ever saw it, which was in 1887, when he himself inadvertently speaks of it as an island. The statement of a witness which, from the nature of things, could not be as said, will be treated as unsaid. Hook v. Railroad, 162 Mo. 569. If Chinn did not see it until six years after it was formed, he

could not well testify as to how it formed. The next witness for plaintiff is H. C. Shields. He swears that he was never on the land in controversy. W. W. Trent, the next witness, swears that he only knew how the land formed there by looking at it now, and judging how it formed by how it now appears. "I did not see the land when it was forming; I was not there when it commenced to form." I do not think the court would take a man's land from him on this evidence. (2) Land formed by alluvium or the gradual and imperceptible accretion from the water, and land gained by reliction or the gradual and imperceptible recession of the water, belongs to the owners of the contiguous land to which the addition is made; the formation or reliction must be imperceptible and must be made to the contiguous land so as to change the position of the water's edge or margin. The owner of contiguous land is not the owner of a sand bar that forms in the river and afterwards joins his land. Cooley v. Golden, 117 Mo. 33. Nor is he the owner of a river bed, or any part thereof, formed by the river changing its channel and shifting and cutting south and deserting its former bed. R. S. 1899, sec. 8346-8349. Nor is he the owner of lands created by avulsion. Where lands are created by avulsion, then, under the Act of April 8, 1895, they belong to the county. Laws 1895, p. 207; R. S. 1899, secs. 8346-8349; Benecke v. Welch, 168 Mo. 267, 67 S. W. 604. (3) Instruction 3 is erroneous for the reason that it does not properly declare the law and that it is indefinite, uncertain, and misleading. This instruction tells the jury that "although the jury may believe from the evidence that after an original bar was formed in the river, etc., still this will not prevent the same from being an accretion to the north shore of the river, provided, the jury shall find, from the evidence, that the land or bar, as originally made, was formed against and annexed to the said north shore, by the action of the waters in receding from said shore and running further south." An instruction rad-

ically wrong, given for plaintiff, can not be cured by another free from the vice of the former. Such repugnant directions afford no guide to the jury, nor can it be presumed that the jury followed one rather than the other. Shoe Co. v. Lisman & Ramsey, 85 Mo. App. 340; Baer, Seasongood & Co. v. Lisman, 85 Mo. App. 317; Herbert v. Boot & Shoe Co., 90 Mo. App. 305; Quick v. St. Louis United Elevator Co., 126 Mo. 279.

*C. B. Crawley* of counsel for appellant.

The demurrer to plaintiff's evidence should have been sustained. (1) In the first place, plaintiff failed to prove that the legal title to fractional southwest quarter of 2 or to fractional southeast quarter of 3 has ever emanated from the United States. Notation of the names "Brown & Rawlings" and "Brown & Adams" on the Government Plat Book, a copy of which was offered in evidence by plaintiff, raises no implication of a valid grant to any person whomsoever. A patent or other conveyance to "Brown & Rawlings" or "Brown & Adams," without other identification of the grantees, by their Christian names, initials, or words of description, and unaccompanied by any offer at the trial of extrinsic proof of identity, would be treated as a mere nullity; leaving the title where it was before. Arthur v. Weston, 22 Mo. 378; Riffle v. Ozark Land & Lumber Co., 81 Mo. App. 177; Jackson v. Cory, 8 Johns. 385; Hanbeck v. Westbrook, 9 Johns. 73; 1 Devlin on Deeds, sec. 51. And if, as plaintiff contends, all the intervening land to the present water-line of the river is an accretion to said fractional quarter sections, the title thereto is, of course, in the same plight. (2) There is no evidence identifying any of plaintiff's grantors, or connecting them or him in any way with "Brown & Rawlings" or "Brown & Adams." Drake v. Curtis, 88 Mo. 644. (3) The foundation of whatever supposed color of title plaintiff and James S. Rollins, his immediate

grantor, ever had to said fractional quarters in sections 2 and 3 is the sheriff's deed of December 8, 1860. That deed was executed to James S. Rollins and seven other persons named therein as joint grantees with him; though there was no evidence showing what right, if any, George W. Walker, Jr., whose supposed interest was conveyed by said sheriff's deed, ever had or claimed.

(4) The interest so acquired by James S. Rollins under said sheriff's deed is all that could possibly have passed to plaintiff under the executor's deed of January 19, 1895. While the evidence of plaintiff shows that "the Rollins" had possession of said original lands for many years before, and at the date of said executor's deed the law presumes, in the absence of proof to the contrary, that the possession so held by "the Rollins" and transmitted to plaintiff was held for, and in behalf of all the grantees named in said sheriff's deed, as tenants in common. So that even if the grantees in said sheriff's deed had acquired the absolute title instead of a mere color, plaintiff would only have acquired, at the utmost, an undivided one-eighth interest from said executors. Warfield v. Lindell, 38 Mo. 561; Whitaker v. Whitaker, 157 Mo. 342; Stevens v. Martin, 168 Mo. 407.

(5) On January 19, 1895, the date of said executor's deed to plaintiff, said fractional southwest quarter of 2 and fractional southeast quarter of 3 were separated from the land here sued for by a strip of ground 100 feet wide previously conveyed by plaintiff's grantor to the M., K. & E. Ry. Co., as recited upon the face of plaintiff's own deed; and were also separated from the land in suit by the lands occupied and claimed by Robinson and White, who subsequently conveyed to plaintiff; and also by Salt Creek, and by the Big Slough. These intervening lands of the railway company and of Robinson and White effectually cut off said fractional quarter sections from the land in suit. Sweringen v. St. Louis, 151 Mo. 348; St. Louis v. Railroad, 114 Mo. 13; Ellinger v. Railroad, 112 Mo. 525; Gould on Waters (2 Ed.), sec.

155, note 1. Yet, not content with such simple exercises of magic as the investment of accretion with seven-league boots in which to stride across country, and causing them to pass dry shod through the depths of the Big Slough while the waters thereof stood parted upon the right hand and upon the left, opposing counsel seek to out Mose Moses himself, by endowing plaintiff's advancing host of sand with the ability to swim Salt Creek. This is certainly the limit. De Lassus v. Faherty, 164 Mo. 361; Crandall v. Smith, 131 Mo. 640. (6) Upon no theory of the case was plaintiff entitled to a verdict and judgment arbitrarily extending east and west side lines from fractional section 3. It devolved upon him to establish by the evidence the portion of alleged accretions belonging to the waterfront of said White land, and his failure to do so can not be supplied by merely adopting as true the description given in his petition. Manchester v. Iron Works, 13 R. I. 355; Kehr v. Snyder, 114 Ill. 313; Cox v. Arnold, 129 Mo. 337; Harn v. Dawson, 134 Mo. 581; Widdecombe v. Chiles, 73 S. W. 444.

*W. M. Williams* for respondent.

(1) The evidence is abundant in the record to show that the tract of land sued for was formed in 1881, against and added to the land now owned by the plaintiff and is an accretion to the same. This proposition requires an examination of the evidence by the court, and nothing further need be said in regard thereto. The jury, under proper instructions, found this issue for the plaintiff, and the verdict was sustained and upheld by the trial judge, who saw the witnesses and heard their testimony. (2) Plaintiff's deed, although made after the accretions were formed and notwithstanding they were not expressly described therein, was sufficient to vest the title to said accretions in him. The deed, after describing the shore land by metes and bounds, expressly states that it should also include any accretions to said lands:

But even this was not necessary. It has been expressly held that the deed would have passed these accretions without any special reference thereto. Jeffries v. East Omaha Land Co., 134 U. S. 178; St. Louis v. Rutz, 138 U. S. 226; Tappendorf v. Downing, 18 Pac. 247. (3) The criticism of plaintiff's third instruction is not well founded. The evidence showed that after the land was formed against the north bank of the river by the gradual recession of the waters thereof, there was in one season deposits of earth and sand on said flat bar, except in the depression spoken of by the witnesses, so as to raise said bar four or five feet higher than when first formed. The instruction simply told the jury that if the land was originally formed against and attached to the north bank of the river as an accretion, this subsequent filling up of a part thereof in one season by the deposits of earth and sand left from an overflow, would not change its character. The condition at the time of the formation of the land must determine that question. McBaine v. Johnson, 155 Mo. 191; Naylor v. Cox, 114 Mo. 232; Bene v. Miller, 149 Mo. 228.

*J. W. Jamison* also for respondent

Since the above was prepared, an additional statement and brief, on behalf of appellant, has been served. By it, and for the first time, the sufficiency of the proof to show title in plaintiff to the shore lands to which the tract in litigation is an accretion, is questioned. Appellant's abstract discloses the fact that at no time during the trial was this question raised. Counsel who tried the case below for appellant not only failed to challenge plaintiff's title to the shore lands at the trial, but even failed to raise that question in his brief filed here. Testimony was offered on behalf of plaintiff tending to show that he and his immediate grantor had been in possession of the land for twenty years or more, under claim of ownership, prior to the institution of the suit.

The law does not require plaintiff, in order to make out a prima facie case, to first prove that the legal title had emanated from the Government before he can have the benefit of adverse possession. Davis v. Thompson, 56 Mo. 39; Barry v. Otto, 36 Mo. 177.

BRACE, P. J.—This is an action in ejectment to recover possession of a tract of land in Howard county containing 25 or 30 acres described in the petition. The answer is a general denial. Verdict and judgment for the plaintiff, and the defendant appeals.

At the close of the plaintiff's evidence, the defendant demurred thereto, and at the close of defendant's evidence, the case was submitted to the jury on the following instructions:

*For plaintiff.*

1. The jury are instructed that the deeds read in evidence in behalf of plaintiff constitute color of title to the land lying on the north bank of the Missouri river immediately north of the lands described in plaintiff's petition, and if the jury believe from the evidence that plaintiff and his grantors have been in the open, notorious, peaceable and adverse possession of said land, situate on the said north bank of said Missouri river, for a period of ten years or more next before the institution of this suit, then such possession vested in plaintiff the legal title to said premises, and also vested in him the title to all accretions made thereto; and if the jury so believe and shall further believe that the land sued for was made to and against the said north bank by the gradual and imperceptible deposit of earth, sand and sediment against said bank by the action of the water, and by the gradual receding of the water of said river from said north bank, then the jury must find the issues for plaintiff.

2. The jury are instructed that it is for them to de-

termine, as a question of fact, from the evidence, whether the tract of land sued for was formed as an island in the Missouri river, or as an accretion to the north bank of said river, and if the jury find from the evidence that said land was formed against the north shore by the gradual receding of the waters of the river from said shore, and the deposit of earth and other substances against said bank, then your verdict must be for the plaintiff.

3. Although the jury may believe from the evidence that after an original bar was formed in the river, if you find that the bar was formed therein, and willows had begun to grow thereon, there was deposited upon said bar by the waters, in one season, earth, sand and other substances, so as to raise the sand bar four or five feet higher than where it was first formed or made, still this will not prevent the same from being an accretion to the north shore of the river, provided the jury shall find from the evidence that the land or bar, as originally made, was formed against and annexed to the said north shore by the action of the waters in receding from said shore and running further south.

4. The jury are instructed that notwithstanding the county of Howard caused the land sued for to be surveyed as an island and conveyed it to defendant as such, still this is not evidence that it was an island, to control the jury in this case; but the jury must determine that question from all the facts and circumstances in evidence before them.

5. The jury are instructed that although there may have been since the years 1884 and 1885, a low place or wide depression between the lands described in plaintiff's deeds and the land in controversy in this action, with well-defined banks, and that waters of the Missouri river have passed through and over the same in time of overflow and high water, still, notwithstanding you shall so find, you should return a verdict for plaintiff, provided you shall further find from the evidence that

the land in dispute was originally made to and against the lands described in plaintiff's deeds as an accretion.

6.    Although the jury may believe from the evidence that the land in question first appeared above the water as a large bar made to and against the north shore or bank of the Missouri river, after an overflow and rise of the waters of said river, still, if this bar was so made by the gradual deposit of earth, sand and sediment by the action of the water and by the gradual receding of the water of said river to the south, it is an accretion and your verdict will be for plaintiff.

*For defendant.*

1.    The court instructs you that before the plaintiff E. H. Chinn can recover in this case he must prove by a preponderance of the testimony that he is the owner of the land in controversy, and unless he has done so to your satisfaction, you should find for the defendant.

2.    The court instructs the jury that under the law of this State all islands and sand bars forming in the Missouri river are the property of the county, and the county court has a perfect right to convey the same to this defendant, or any one else, and in this case, if you find that the land in controversy was an island or sand bar formed out in the Missouri river, your verdict should be for the defendant.

3.    The court instructs you that the plaintiff only taking title to the margin of the river can claim in addition to the original grants only such land as may have been added thereto by the regular process of accretion or reliction.  Land formed by alluvion or the gradual and imperceptible accretion from the water, and land gained by reliction, or the gradual and imperceptible recession of the water, belong to the owners of the contiguous land to which the addition is made; the formation or reliction must be imperceptible and must be made to the

contiguous land so as to change the position of the water's edge or margin, and the owner of contiguous land is not the owner of an island or sand bar that springs up or forms in the midst of the stream; and in this case unless the jury find from the evidence that the land in controversy was an accretion to lands owned by plaintiff, and not an island originally formed out in the river, then the verdict should be for defendant.

4. The court instructs you that unless you find and believe from the evidence that the land sued for is an accretion to plaintiff's land, as in these instructions explained, your verdict must be for the defendant.

5. The court instructs the jury that if you find from the evidence that a sand bar or an island formed in the Missouri river opposite plaintiff's land; and that the waters of the Missouri river ran around said island or sand bar for any considerable length of time, then, such island or sand bar is not an accretion to plaintiff's land, although the jury may further find that by the washing of the Missouri river such island or sand bar is now connected with plaintiff's land; and in such case your finding must be for defendant.

6. The court instructs you that if you find and believe from the evidence that there was a well-defined slough between the land now owned by plaintiff and the land in controversy, which existed for any considerable length of time after the formation of the land in controversy and that said formation was originally an island or sand bar then you should find for the defendant.

7. If the jury find from the evidence that the land in controversy formed out in the Missouri river, and did not form by connecting with or accreting to the land on the north bank of said river, then in that event, plaintiff can not recover in this proceeding.

8. Before the plaintiff can recover in this case he must prove to the satisfaction of the jury that the lands in controversy are accretions to his shore land, formed

by the action of the Missouri river in washing sand or dirt against said land, and from thence said lands were formed out into the Missouri river, and unless said lands were so formed your finding must be for the defendant.

The case tried below was whether the land in controversy was an accretion to the shore land of plaintiff, as contended for by him, or an island formed in the Missouri river, as contended for by the defendant. It of course became necessary for the plaintiff, in order to maintain his action, to show that he was the owner of the shore land and in order to do this he introduced conveyances showing two chains of title under which he claimed, and parol evidence of possession thereunder by him and his grantors for a period longer than necessary to confer title by limitation. The whole of this evidence was admitted without any objection whatever upon the part of the defendant, and the case proceeded and was submitted to the jury by both sides upon the theory that the plaintiff was the owner of the shore land. Upon this theory the original brief herein was prepared by counsel for appellant, and served upon counsel for respondent, in which it was contended that the trial court committed error in refusing to sustain the demurrer to the evidence on the ground that there was no substantial evidence to show that the land in controversy was an accretion to the plaintiff's shore land, and in giving instruction numbered 3 for the plaintiff, and these were the only errors assigned or argued therein. After counsel for respondent had prepared their reply to this brief, they were served with an additional brief in which it was contended that the demurrer to the evidence ought to have been sustained for certain alleged defects in the proof of plaintiff's ownership of the shore land, and this was the first time that the sufficiency of the proof to show title in plaintiff to the shore land to which it was claimed the land in controversy was an accretion was ever questioned in any tangible manner.

1. A general demurrer to the evidence can not be

used for the purpose of injecting into a case in the appellate court, questions that were not in some manner specifically called to the attention of the trial court, and upon which it can not be seen that the trial court had an opportunity to and did rule. · The appellant having tried his case below on the theory that plaintiff was the owner of the shore land, it must be tried here on the same theory. [Mirrielees v. Railroad, 163 Mo. l. c. 486; Horgan v. Brady, 155 Mo. l. c. 668; State ex rel. v. Chick, 146 Mo. 645; Evans v. Kunze, 128 Mo. 670.] Hence, while counsel for respondent in a brief addendum to their reply very effectively dispose of the contention made in this additional brief of appellant, we shall confine the rulings herein to the questions raised in the original brief.

2.  The Missouri river in its ·tortuous course through the State has no immutable boundaries except the rock bluffs which arise above its waters on either side.   While all between is subject to its caprice, there seems to be a periodicity in the general movement of the, main body of its waters between those immutable boundaries.    The evidence in this case tends to prove that since the year 1816, the river in the locality in which the land in question is situate, had been receding from the north or Howard county bluffs, toward the south, or Cooper county bluffs, and in this process making bottom lands upon the Howard county side of the river, and cutting away land on the Cooper county side.   That in this process the shore land of the plaintiff on the north side of the river in Howard county and much other bottom land in that county was formed in the years preceding 1875.   That at that time the river ran in a well-defined channel along the south line of plaintiff's shore land.   That thereafter another periodical recession from the Howard county side and a corresponding cutting away on the Cooper county side of the river commenced, during the process of which the land in question, together with other lands, were formed on the Howard

county.side of the river, south of which the main chan-
nel of the river thereafter ran.

The evidence of the plaintiff tended to prove that
in the year 1881 there first appeared in the course of the
recession, in front of, alongside, against and attached to
the north shore of the river on which plaintiff's land
was situate, a sand bar about a mile long and a quarter
of a mile wide, south of which the channel of the river
thereafter ran.    That since that time said bar has so
remained; the lower end of which, attached to plaintiff's
shore land with the subsequent accretions thereto, is
the land in question.

The evidence for the defendant tended to prove that
when the said bar first appeared it was some distance,
and detached, from the north shore, between which and
the bar the channel of the river for a time continued in
part to run, and thereafter became attached to the shore
land by subsequent accretions.    There was a sharp con-
flict in the evidence on the crucial question, whether the
land in question was an island so to speak, formed in the
river by the recession of its waters with its subsequent
accretions, as claimed by the defendant, or a reliction to
plaintiff's shore land with its subsequent accretions, as
claimed by him.    There was substantial evidence intro-
duced to support each theory, and the court committed
no error in submitting the case to the jury.

3.    The instructions under which the issues were
submitted to the jury have been set out at length, and
are in harmony with the views of this court as expressed
in many recent cases. [Moore v. Farmer, 156 Mo. 33;
McBaine v. Johnson, 155 Mo. 191; Hahn v. Dawson, 134
Mo. .590; Perkins v. Adams, 132 Mo. 131; Cooley v.
Golden, 117 Mo. 49; Naylor v. Cox, 114 Mo. 238; Buse
v. Russell, 86 Mo. 215; Benson v. Morrow, 61 Mo. 351.]
Of these instructions, but one for the plaintiff is criti-
cized, and that is instruction numbered 3 by which, it is.
contended for the defendant, the jury was authorized to.
find that the land in controversy was an accretion to the.

north shore, although they may have believed from the evidence that it first formed as an island or sand bar out in the river. The criticism on this instruction is not well founded; the direction therein is wholly predicated of a bar which the jury are required to find was originally formed against and annexed to the north shore and when read in connection with the other instructions, and applied to the evidence, could not possibly have misled the jury in the manner indicated.

4. There is nothing in the remaining point made, that the land in controversy is not within the metes and bounds of the land described in the deed of plaintiff's immediate grantor, for by that deed not only was the land thus described conveyed, but "all accretions and riparian rights belonging to said land." Thus covering the very right and title which the plaintiff is asserting in this case. On the whole, the case was well tried and the judgment should be affirmed. It is accordingly so ordered.

All concur.