STATE vs. BOWEN and others.

*March 16—April 3, 1912.*

*State boundaries: Main channel of stream: Change in channel: Fish and game laws: Jurisdiction.*

1. The jurisdiction of a state for the enforcement of its fish and game laws is co-extensive with, and limited by, the boundaries of the state, even though they consist of the thread of a navigable stream over whose waters the adjacent states have concurrent jurisdiction for other purposes.

2. Where the boundary line between states is declared to be the center line or thread or middle of the main channel of a stream separating them, the conditions then existing govern as to what channel is meant; and the *then* channel, except as it may be changed by erosion or accretion, will forever contain within it the declared boundary line, though not necessarily in the same place at all times.

3. Thus, no change in the boundary line between Wisconsin and Minnesota resulted from the construction of a dam which diverted the waters of the Mississippi river from the original main channel, east of a certain island, to a channel west thereof, although such western channel thereupon became the main channel and the only one navigable by steamboats.

REPORTED from the circuit court for La Crosse county: E. C. HIGBEE, Circuit Judge. *Question answered in the negative.*

The defendants were charged with a violation of the provisions of sec. 4560*d*, Stats., being ch. 525 of the Laws of 1909, in this, that they did on the 15th day of April, 1911, in the county of La Crosse and state of Wisconsin, unlawfully set, place, and use in an inland water of this state, to wit, in the Mississippi river, one certain net which was not then and there a landing net. The respective parties, by their attorneys, stipulated in open court that a jury be waived and that the case be tried and determined by the court. The judge found the facts as follows:

"That, on the day charged in the complaint, the defendants were fishing with a seine and trammel net in what is known

as the east channel of the Mississippi river and west of the thread of the stream of said channel and at a point opposite to the county of La Crosse, Wisconsin, and east of Minnesota Island, contrary to the provisions of sec. 4560*d* of chapter 525, Laws of 1909.

"That said east channel lies between the Wisconsin main shore and what is known and designated upon the government maps as Minnesota Island.

"That, prior to 1876, said east channel of the Mississippi river was the one usually navigated by steamboats and was designated as the main channel of the Mississippi river by the surveyors who surveyed La Crosse county in 1854.

"That, about the year 1877, the Chicago, Milwaukee & St. Paul Railroad Company constructed a bridge from the main land in La Crosse county across said east channel and across said Minnesota Island and to the main Minnesota shore.

"That, prior to the construction of said bridge and in 1876, the said Chicago, Milwaukee & St. Paul Railroad Company constructed a dam across said east channel of the Mississippi river near the head of said Minnesota Island, thus diverting the said main channel of the river from the east side of Minnesota Island to the west side thereof in order to avoid constructing a drawbridge across said east channel and to throw and divert the channel of said river through the drawbridge constructed by it on the west side of said Minnesota Island.

"That, since the construction of said dam, the main navigable channel of the Mississippi river has been to the west of said Minnesota Island and, since said date, the said east channel has not been navigable for steamboats.

"That the construction of said dam diverting the said channel was with the consent of the War Department of the government of the United States.

"That the said Minnesota Island was surveyed by the government of the United States as a part of the state of Minnesota; and the taxes upon the same have been ever since assessed and collected by the authorities of the state of Minnesota."

As a conclusion of law, the judge found the defendants guilty as charged in the complaint; but, being of the opinion that a question of law arose on the trial which was so impor-

tant as to require the decision of the supreme court thereon, and the defendants consenting thereto, he reported the following question for the decision of this court:

"Upon the foregoing findings of fact, has the circuit court of La Crosse county jurisdiction of this prosecution?"

For the state there was a brief by the *Attorney General* and *Russell Jackson,* deputy attorney general, and oral argument by *Mr. Jackson.*

*James Thompson,* district attorney, for La Crosse county.
*F. E. Withrow,* for the defendants.

VINJE, J. In *Roberts v. Fullerton,* 117 Wis. 222, 93 N. W. 1111, it was held that the jurisdiction of a state for the enforcement of its fish and game laws is co-extensive with, and limited by, the boundaries of the state, even though they consist of the thread of a navigable stream over whose waters the adjacent states have concurrent jurisdiction for other purposes. The answer to the question reported, therefore, depends upon whether or not the boundary of the state of Wisconsin changed from the thread of the channel east of Minnesota Island to the thread of the channel west thereof by reason of the construction of the bridge and dam of the Chicago, Milwaukee & St. Paul Railroad Company about 1877, which diverted the waters into the west channel to such an extent that it afterwards became the main channel and the only one navigable by steamboats.

The district attorney of La Crosse county relies upon the cases of *Franzini v. Layland,* 120 Wis. 72, 97 N. W. 499, and *Iowa v. Illinois,* 147 U. S. 1, 13 Sup. Ct. 239, to sustain the contention that the boundary changed with the change of channel. Those cases establish the rule that *within the limits of the main channel* the boundary follows the "mid-channel" or thread of the stream as it changes from time to time owing to the gradual shifting of sand banks, or other causes. But they do not hold that the creation of a new and different

main channel shifts the boundary from the old to the new. And such is not the law. For the purpose of determining the boundary between states where that is declared to be the center line, or thread, or middle of the main channel of a stream separating them, the conditions existing at the time of their creation govern as to what channel is meant. The *then* main channel, except as it may be changed by erosion or accretion, will forever contain within it the declared boundary line, though not necessarily in the same place at all times. *Nebraska v. Iowa,* 143 U. S. 359, 12 Sup. Ct. 396; *Missouri v. Nebraska,* 196 U. S. 23, 25 Sup. Ct. 155; *Washington v. Oregon,* 211 U. S. 127, 29 Sup. Ct. 47; *S. C.* 214 U. S. 205, 29 Sup. Ct. 631; 1 Farnham, Waters, § 7*f,* p. 40; Gould, Waters, § 159.

In *Iowa v. Nebraska* and *Missouri v. Nebraska, supra,* it is held that where a stream which is the boundary between two states from *any cause* suddenly abandons its old bed and seeks a new one, such change in the channel results in no change in the boundary. That remains in the center of the old bed or channel even though it may be dry. In each of those cases the change was caused by avulsion. In the present case the change was caused by the construction of a dam. It is obvious that any change wrought in the flow of the water by means of a dam cannot affect the question of state boundary any more than can such change produced by avulsion. It is only where the change takes place by the slow process of erosion or accretion that a change in boundary is effected. *Missouri v. Nebraska,* 196 U. S. 23, 25 Sup. Ct. 155. States and individuals alike are subject to the losses and gains of erosion and accretion, but neither can have the boundaries of his domain changed by avulsion or by the diversion of the water effected by human agencies. *New Orleans v. U. S.* 10 Pet. 662. Such being the law, a negative answer to the question reported for decision is required. It is due to the attorney general to add that, for reasons stated in his brief, he

argues that no change in the state boundary was effected by the construction of the dam and consequent diversion of the water into the western channel.

*By the Court.*—The question reported is answered No.