**William D. WITTER,
Plaintiff-Respondent,**

v.

**The COUNTY OF ST. CHARLES, Missouri, et al., Defendants-Appellants.**

**No. 36169.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

Sept. 23, 1975.

Thomas W. Wehrle, Counselor, James H. White, Associate County Counselor, George W. Lang, II, Asst. County Counselor, St. Louis, Clayton, for defendants-appellants.

G. Carroll Stribling, G. Carroll Stribling, Jr., Fordyce, Mayne, Hartman, Renard, Stribling & Boedeker, St. Louis, for plaintiff-respondent.

ALDEN A. STOCKARD, Special Judge.

Plaintiff is the owner of Howell Island, also referred to as Island No. 85, comprising approximately 2,570 acres and located in the Missouri River. He alleged in his petition that both St. Charles County and St. Louis County claim the island to be within its boundaries and that each county claims the right to assess and collect taxes and to exercise jurisdiction over it. Plaintiff prayed for a declaratory judgment that Howell Island is located in St. Charles County, and that St. Louis County be enjoined from exercising any governmental jurisdiction over it. The trial court found Howell Island to be in St. Charles County and granted the requested injunctive relief. St. Louis County, and the named officials thereof, have appealed. We affirm.

The trial was held before the court without a jury, and the record contains numerous exhibits, some of which are voluminous. In making our review on this appeal we determine the cause *de novo*, weigh the competent evidence introduced upon the factual issues essential to the appeal, and reach our conclusions of fact based on the evidence, although we defer to the finding of the trial court where there is conflicting oral testimony involving a determination of credibility of witnesses. *Martin v. Norton*, 497 S.W.2d 164 (Mo.1973). We have carefully reviewed the competent evidence in accordance with the above rules and have determined and reached our own conclusions as to the facts material to the issues presented. We shall set forth only those facts without a detail of the evidence.

Howell Island is roughly oval in shape. The St. Charles bank of the Missouri River lies generally north of the island and the St. Louis County bank lies generally to the south. At all times prior to 1930 the middle

of the main channel (referred to in the evidence as the "Thalweg" or "Navigational Thalweg") of the Missouri River ran to the south of Howell Island and between the island and the St. Louis County bank of the river. Except during periods of high water, when navigation was sometimes possible in the channel to the north of the island, all navigation passed through the channel to the south of the island.

Starting in the fall of 1930, the United States Army Corps of Engineers caused a dike to be built adjacent to the downstream end of Howell Island and extending from the St. Louis County bank out into the river substantially closing off the channel which prior thereto ran south of the island. The purpose and effect of the dike was to cause the main channel to shift to the north side of Howell Island, and this was accomplished within a few weeks, or at most several months. The shifting of the flow of the water necessarily resulted in a scouring action to the north of the island and a silting action to the south of the island, and shortly thereafter all navigation was required to go through the channel to the north of the island. A few years later the United States Army Corps of Engineers constructed additional dikes from the St. Louis County bank of the river to the upstream end of Howell Island which completely sealed off what was left of the old channel on the south side of the island. Following this action of the Corps of Engineers, there has existed a permanent, insofar as any channel can be permanent in the Missouri River, and stable navigable channel in the Missouri River to the north of Howell Island and between it and the St. Charles bank which is navigable and is the main channel or thalweg.

The boundary line between St. Charles County and St. Louis County, at the place material to the issues in this case, is set forth in identical language in § 46.141, defining the boundaries of St. Charles County, and § 46.145, defining the boundaries of St. Louis County, as "thence down the Missouri river, in the middle of the main channel thereof." It is clear, and

there is no dispute between the parties, that prior to the commencement of the above referred to construction work in 1930 by the Corps of Engineers, Howell Island was within the boundaries and was a part of St. Charles County.

The question thus presented is whether, when the main channel or thalweg of the Missouri River was changed from the south side of Howell Island to the north side thereof by the construction of dikes by the Corps of Engineers, the boundary between St. Charles and St. Louis Counties also changed and the island became a part of St. Louis County, or did the island remain a part of St. Charles County.

Where the boundary between states or political subdivisions is located in running water, changes in such boundary are determined by application of the basic principles stated in *Kansas v. Missouri*, 322 U.S. 213, 64 S.Ct. 975, 88 L.Ed. 1234 (1944) as follows: " * * * when changes take place by the slow and gradual process of accretion the boundary moves with the shifting in the main channel's course," but "a sudden or avulsive change in that course does not move the boundary, but leaves it where the channel formerly had run." Or, as stated another way in *Nebraska v. Iowa*, 143 U.S. 359, 12 S.Ct. 396, 36 L.Ed. 186 (1892): "Accretion, no matter to which side it adds ground, leaves the boundary still the centre of the channel. Avulsion has no effect on boundary, but leaves it in the center of the old channel." See also, *Arkansas v. Tennessee*, 310 U.S. 563, 60 S.Ct. 1026, 84 L.Ed. 1362 (1940). The State of Missouri has applied the above rules with respect to county lines, *Randolph v. Moberly Hunting & Fishing Club*, 321 Mo. 995, 15 S.W.2d 834 (1929).

Appellants do not challenge these basic rules, but in an attempt to escape the result of an application of the doctrine of avulsion, they assert that "The evidence * * * does not indicate an 'avulsive' change, thus making the boundary between St. Louis and St. Charles Counties the present main channel." Appellants rely on cases which,

in reference to a change by avulsion, refer to such terms as "suddenness," *Kansas v. Missouri*, 322 U.S. 213, 64 S.Ct. 975, 88 L.Ed. 1234 (1944), or "heaping up at an instant," *Nebraska v. Iowa*, 143 U.S. 359, 12 S.Ct. 396, 36 L.Ed. 186 (1892), or "suddenly and with great violence," *Arkansas v. Tennessee*, 246 U.S. 158, 38 S.Ct. 301, 62 L.Ed. 638 (1918). A change by accretion, appellant asserts, is a gradual and imperceptible change, *McBaine v. Johnson*, 155 Mo. 191, 55 S.W. 1031 (1900), or as stated in *Jefferis v. East Omaha Land Co.*, 134 U.S. 178, 10 S.Ct. 518, 33 L.Ed. 872 (1890), "the test of what was gradual and imperceptible was that, although the witnesses might see from time to time that progress had been made, they could not perceive it while the process was going on."

"The legal effect of an act of the government in changing the main channel or current of a river may be analogous to a change caused by an avulsion, or may not be, depending on the circumstances in any particular case." 65 C.J.S. Navigable Waters § 86, p. 269. In this case the construction work of the Corps of Engineers did not merely aid the river in making an imperceptible change. As one witness stated: "Man made the river abandon it," the channel, by substantially blocking it and thereby forced the water to the north of Howell Island to form a new main channel. This occurred in a relatively short period of time. It was in the fall of 1930 when the construction was started, and the survey of the Corps of Engineers made in September of that year showed that the thalweg was to the north of Howell Island. If flood waters had existed for the same period of time and the river had formed the new channel when the flood receded the change would unquestionably have been the result of an avulsion. See *Louisiana v. Mississippi*, 282 U.S. 458, 51 S.Ct. 197, 75 L.Ed. 459 (1931). What occurred here was what is referred to in *Garrett v. State*, 118 N.J.Super. 594, 289 A.2d 542 (1972) as an "artificial avulsion."

For cases involving a comparable factual situation with the result that boundaries were not changed, see *State v. Bowen*, 149 Wis. 203, 135 N.W. 494 (1912), where the construction of a bridge caused a change in the main channel, and *Whiteside v. Norton*, 205 F. 5 (8 Cir. 1913), where dredging of the riverbed caused a change in the channel.

We conclude that the man-made avulsive change in the main channel of the Missouri River from the south side of Howell Island to the north side did not result in a change in the boundary between St. Charles and St. Louis Counties.

The result we have reached makes it unnecessary to elaborate on, or rule, the assertion of St. Charles County that because it continuously exercised jurisdiction over Howell Island, and because St. Louis County has not, St. Louis County is estopped to now claim jurisdiction. We also need not rule on the contention of St. Louis County that the so-called "Island Rule," as set forth in *Missouri v. Kentucky*, 78 U.S. 395 (11 Wall. 395), 20 L.Ed. 116, should not be applied to boundaries between subdivisions of a state.

The judgment is affirmed.

SMITH, C. J., and NORWIN D. HOUSER, Special Judge, concur.