OF THE

# STATE OF MISSOURI.

AT THE

OCTOBER TERM, 1886.

(*Continued from Volume 90.*)

SMITH et al., *Appellants*, v. JAMESON et al.

| | |
|---|---|
| 91 | 13 |
| 80a | 134 |
| 91 | 13 |
| 82a | 624 |
| 91 | 13 |
| 98a | ¹341 |

1. **Injunction: TITLE TO LAND.** An injunction will not lie as an original and independent proceeding to determine the title to land, and mines located thereunder, where the same are held by the defendants, under claim of right and color of title.

2. **Ejectment: INJUNCTION PENDENTE LITE.** Ejectment is the appropriate action in such case, and, under proper averments in the petition, supported by the requisite proof, an injunction *pendente lite* might be granted as auxiliary to the action at law.

*Appeal from Jasper Circuit Court.*—HON. NOAH M. GIVAN, Special Judge.

AFFIRMED.

*Phelps & Brown* for appellants.

(1) The testimony is uncontradicted that the plain-

(13)

tiffs were in possession of the surface of the land up to the "line shaft," which covers and includes the disputed strip, hence an action of ejectment would not lie, and the only adequate remedy for plaintiffs was by injunction. An injunction will lie to restrain trespass to mining property, since the injury goes to the immediate destruction of the minerals which constitute the chief value of that species of property, and because it operates as a permanent injury to the property as a mine. 1 High on Inj.; sec. 730 ; 7 Ves. 308 ; 2 Sto. Eq., sec. 929 ; *More v. Massini*, 32 Cal. 509 ; *Merced Mining Co. v. Fremont*, 7 Cal. 317 ; *Thomas v. Oakley*, 18 Ves. 184; *Lockford v. Lungsford*, 56 Mo. 68. (2) It is admitted in the case that this property is open, uninclosed land, chiefly valuable for mining purposes. Where one digging coal upon his own premises has worked through upon the ground of another, he may be enjoined from proceeding. High on Inj., sec. 734. And the digging of lead upon the public lands of the United States is such a trespass as will warrant the interference of equity in behalf of the government. *United States v. Geer*, 3 How. 131. (3) Courts of equity are inclined to the liberal use of the remedy by injunction to prevent trespasses to mines, the relief being granted for the prevention of irreparable injury, resulting as well from the character of the property as the nature of a trespass. High on Inj. 735. And the relief is regarded as peculiarly applicable to zinc mines, which may be worked out and removed without leaving any evidence of their value upon which to base an accounting. *Chapman v. Toy Long*, 4 Sawyer, 28.

*Harding & Buller* for respondents.

(1) The petition alleges "that defendants are mining and digging in a certain mining shaft on plaintiffs' land," at or near " the division line aforesaid;" and in

the agreed statement of facts it is admitted that defendants were in possession "of shaft on the disputed strip." A party cannot controvert a fact alleged in his pleading, nor one expressly admitted in an agreed statement of facts. (2) An injunction will not lie as an independent proceeding, even to restrain parties in possession from mining on the land. High on Inj., sec. 470; *West Point v. Reymert*, 45 N. Y. 703; *Hart v. Mayer*, 9 Wend. 571; *Echelchamp v. Schrader*, 45 Mo. 505. A court of equity will not, in such case, try the title to the premises. *Maguire v. Taylor*, 47 Mo. 124; *Jarmey v. Spedden*, 38 Mo. 395. (4) Even if the proceeding was proper to have tried the title, under the evidence the court should have dismissed the bill, the defendants' title having been shown to have been the best under the statute of limitations, no matter which survey was the correct one. *Mylar v. Jones*, 60 Mo. 105; *Tauner v. Kellogg*, 49 Mo. 118.

RAY, J.—This is an original and independent suit, for an injunction to restrain the defendants from moving upon a "strip of ground" on the boundary line between lots one and two, of the southwest quarter of section 7, township 28, range 33, in Jasper county, twelve feet wide at the north end and twenty at the south end, the ownership and possession of which is claimed by both parties. Suit was commenced twelfth of January, 1883, with temporary injunction till the March term, 1883, when there was answer of general denial and motion to dissolve the injunction, which came on for trial at the September term, 1883, and resulted in a finding and judgment for defendants, dissolving the injunction and dismissing the bill, from which the plaintiffs appealed to this court.

At the trial it was admitted that the plaintiffs were the owners and in possession of lot two, of said quarter section, and that the defendants, Jameson and Vivian, were the

owners and in possession of lot one of said quarter section ; and that the other defendants were moving on the west side of lot one, under a license from said Jameson and Vivian, and that lot two is valuable principally for mining purposes ; that the controversy here is as to the line between the lots, the strip in dispute being, as before stated, twenty feet wide at one end and twelve at the other, and that defendants are in possession of shaft on the disputed strip—that is, in possession of the shaft located on the line of the disputed strip known as the line shaft. The shaft itself, in which the mining is being done, is conceded to be in possession of defendants, and one-half of it, less six inches, is, also, admitted to be on lot one, outside the disputed strip, but it is claimed, and the evidence tends to show, that, at the bottom of the shaft, defendants are drifting west, at one point, about six feet, and at another about fifteen feet, and mining on the disputed strip, and have taken therefrom about one hundred tons of ore, worth two thousand dollars. The line between lots one and two ran north and south, lot one being on the east and lot two on the north. Two different surveys had been made for the purpose of locating and fixing this dividing line ; the first was made in 1852, by Mark Richardson, as county surveyor, at the instance of J. N. Vivian, the original owner of lot one, under whom defendants claim, who located and fixed the southwest and northwest corners of lot one, and ran the line between said corners as the western boundary of said lot, and blazed the way all along between said corners, by marking the trees, which were still visible and traceable at the time of the trial. In July, 1883, after suit was commenced, another survey was made, by K. Elliott, as county surveyor, at the instance of plaintiffs, who located the dividing line east of that fixed by Richardson in 1852.

These two lines, as before stated, were twelve feet · apart, at the north end, and twenty at the south, and

the strip of ground, between them, is the land in contro-
versy.　The correctness and legality of each survey is
controverted by the opposing party.　In addition to
these two surveys, there was another survey made in
1881, under article 2, of chapter 58, Revised Statutes,
1879, for the purpose of locating, identifying, and es-
tablishing the corners, line and western boundary, of
lot one, as fixed by the original survey of Richardson,
made in 1852.　This survey, at which said Elliott acted
as county surveyor, was made at the instance of defend-
ants, and resulted in re-locating and fixing the western
corners and line of lot one, within a foot or two of the
original boundary made by Richardson's survey of 1852.
The shaft, called the line, or Weatherby & Mayhew,
shaft, is located on the eastern line, run by Elliott, in
July, 1883, which passes over the mouth of the shaft
and six inches east of the center thereof.　It was in this
shaft, thus situated mostly on the disputed strip, that
defendants were mining, at the time this suit was
brought, the plaintiffs claiming that the disputed strip,
west of the line, was a part of lot two, and belonging to
them, and was in their possession, at the institution of
this suit ; while the defendants claim that all the land
east of the line run by Richardson, in 1852, including
the disputed strip, was a part of lot one, and in law and
fact, was in their possession, and had so been, ever
since the Richardson survey of 1852, except a brief in-
terval, at and subsequent to the late civil war, and by
reason thereof.

In support of this claim, there was evidence tending
to show that the defendants, and those under whom
they claim, had lived and resided upon lot one, ever
since the Richardson survey, in 1852, except the in-
terval aforesaid ; that they had actual possession of a
part of said lot, in the name of the whole, under claim
and color of title, exercising the usual acts of owner-

ship over the whole tract, up to the Richardson survey, as the western boundary thereof. There was evidence, also, tending to show, that for some short time, before the institution of this suit, the plaintiffs had been mining on the disputed strip, close up to the eastern line, run by said Elliott, in July, 1883, and claimed to own the same.

The question presented for our determination, upon this state of facts, is, whether injunction will lie, as an original and independent suit, to try the title to the disputed strip of ground and the mines in question, situated thereon, and so held and possessed by the defendants, under claim of right and color of title ? On this subject, the law is thus stated, by High on Injunction. section 732, "The jurisdiction, in restraint of trespass to mines, is not an original jurisdiction of equity, under which the court would be justified in trying the title to the mines themselves, and the party aggrieved must, therefore, first establish his title at law, or show satisfactory reason for not doing so. And an injunction has been refused, when defendants claim under an adverse title, and where plaintiffs had allowed nearly a year to pass, after defendants had begun working the mine, before seeking relief. So it is proper to refuse the injunction, where plaintiffs' right is, by no means clear, and where his remedy at law is adequate." In the same section, this author further adds, " It is not necessary, however, that the owner should have actually established his title, by an action at law, and if he makes out a good '*prima facie*' title, which is not controverted by defendant, and shows that those under whom he claims have been in possession and use of the mine for a long period of years, he is entitled to an injunction to prevent such depredations upon his mine, as are likely to result in irreparable injury." There is an abundance of other authority to the same effect. *Pillsworth v. Hopton*, 6 Vesey, 50 ; *Smith v. Collyer*, 8 Vesey,

89; *Hart v. Mayor*, 9 Wend. 571; *Echelkamp v. Schrader*, 45 Mo. 505; *Preston v. Smith*, 26 Fed. Rep. 884; High on Injunctions, sects. 697, 698, 701.

Tested by these views, it will be seen that plaintiffs' case falls very far short of the requirements of the law, in such cases. In a case like the present, an action of ejectment would be an appropriate remedy, to test the right and try the title to the "disputed strip and mines" in question, and in such action, and as auxiliary thereto, if the facts warranted it, and under proper averments, an injunction, *pendente lite*, might be appropriate and amply secure all the just rights of the plaintiffs in the premises. *Janney v. Spedden*, 38 Mo. 395; *Majors Heirs v. Rice*, 57 Mo. 385; *Moore v. Perry*, 61 Mo. 174; *Tamm v. Kellogg*, 49 Mo. 119.

With these views, and under these authorities we are of opinion that the trial court committed no error in dissolving the injunction and dismissing the bill, and, for these reasons, its judgment is affirmed. All concur, except Brace, J., absent.