THE STATE ex rel. S. S. McMILLAN v. L. B. WOODSIDE, Judge, et al.

In Banc, February 10, 1914.

1. **JURISDICTION: Injunction: Notice of Application.** Jurisdiction of the circuit court, in the sense of power to act, in the matter of granting a preliminary injunction to restrain the county court from approving a contract to build a bridge, is not conditioned upon a showing of a previous notice of an application therefor.

2. ——: ——: ——: **Reasonable Conduct.** Where the notice was given of an application for a preliminary injunction as soon as the plaintiffs were apprised of the place and time fixed for a hearing, and though the time was short it

was shortened to accord with the departure of the judge in an emergency, and upon an understanding that the defendants would not appear, and was granted after plaintiffs were required to agree to try the case at a special term, which would be called, if defendants desired, there was nothing injudicial in granting the writ.

3. ———: ———: To Restrain County Court from Contracting for Bridge. The circuit court has jurisdiction to restrain the county court from approving and authorizing the letting of a contract to build a bridge, to be paid for out of the revenue, if the amount of money so to be used, as shown by the petition therefor, is in excess of the revenues of the county under the constitutional limit and the contract would be violative of the statutory prescription for the creation of an indebtedness.

4. ———: ———: ———: Power of County Court: Discretionary. As to the matter of determining the necessity for a bridge the county court has full powers of decision; and in that respect, its determination is discretionary and unreviewable by any other court.

5. ———: ———: ———: ———: Ministerial. But as to contracting for the building of a bridge and paying for the work, the powers of the county court are administrative and subordinate to the Constitution and statutes, and are controllable by superior courts; and if the court attempts to approve a contract to build a bridge which would be in disregard of the Constitution and statutes, it can be restrained by the circuit court through its writ of injunction.

## Prohibition.

Wᴿɪᴛ ǫᴜᴀsʜᴇᴅ.

*Holmes & Holmes* and *C. H. Davis* for relator.

(1) Our statutes provide that the remedy by writ of prohibition shall be granted to prevent usurpation of judicial power, and in all cases where the same is now applicable according to the principles of the common law. R. S. 1909, sec. 2622; State ex rel. v. Goodier, 195 Mo. 561; State ex rel. v. Reynolds, 209 Mo. 161. (2) Prohibition will issue to stay proceedings by injunction to enjoin county courts from pro-

ceeding in accordance with the provisions of the stat-
utes for the construction of bridges. The circuit court
having no jurisdiction of the subject-matter, the re-
spondent Woodside could not legally grant the tem-
porary injunction. County courts have exclusive
jurisdiction, and in these matters their acts are admin-
istrative and ministerial. Vitt v. Owens, 42 Mo. 512;
Decker v. Diemer, 229 Mo. 296; State ex rel. v. Co. Ct.
Clark County, 41 Mo. 44; State ex rel. v. Goodier, 195
Mo. 551; State ex rel. v. Thomas, 183 Mo. 220; State
ex rel. v. Bollinger, 219 Mo. 204; Hockaday v. Newson,
48 Mo. 196; Trainer v. Porter, 45 Mo. 336; Jefferson
Co. v. St. Louis Co., 113 Mo. 619; County Ct. v. Town-
ship, 10 Mo. 679; Railroad v. St. Louis, 92 Mo. 160;
State ex rel. v. Aloe, 152 Mo. 466; Thomas v. Mead, 36
Mo. 232. (3) The writ of prohibition will lie to re-
strain the unlawful exercise of judicial functions by
inferior tribunals. State ex rel. v. Elkins, 130 Mo. 90;
Harrison Co. v. Burris, 84 Mo. App. 654; State ex rel.
v. Goodier, 195 Mo. 551; Hockaday v. Newson, 48 Mo.
196; Vitt v. Owens, 42 Mo. 512; State ex rel. v. Co. Ct.
Clark Co., 41 Mo. 44; State ex rel. v. Sale, 188 Mo. 496.
(4) There is no merit in the contention of respondents
that relator cannot maintain this action. The writ is
granted at the instance of any one of the parties to the
suit, and even to a stranger. Trainer v. Porter, 45
Mo. 336; State ex rel. v. Co. Ct. Clark Co., 41 Mo. 49;
Thomas v. Mead, 36 Mo. 248. (5) The most frequent
and important, if not the only grounds for equitable
interference by injunctions in actions at law, are
fraud, accident and mistake. Spelling on Injunctions
and Other Extraordinary Remedies (2 Ed.), sec. 38.
An injunction will be granted only to prevent the vio-
lation of a positive right. And mere negligence in a
matter of official routine, though under the proceed-
ing by virtue of which an officer's claim to act be
irregular, will not warrant an injunction against him.
Spelling on Injunctions and Other Extraordinary

Remedies (2 Ed.), sec. 610. It is another well-established rule that injunction will not issue to prevent officers from doing acts authorized by valid law, enacted with a view to promoting the public welfare, whatever the opinion of the court as to the wisdom or expediency of such laws. Spelling on Injunctions and Other Extraordinary Remedies (2 Ed.), sec. 611. The rule that courts will not interfere to restrain or control the exercise of discretionary power also · has special application in cases where injunction is sought to restrain the construction of works of public improvement, such as streets, sewers, bridges and public buildings; and when such matters are by law entrusted to municipal bodies equity will not revise or control the exercise of discretionary powers as to the terms upon which, or the manner in which the improvement shall be made. Spelling on Injunctions and Other Extraordinary Remedies (2 Ed.), sec. 689. (6) The county court was proceeding lawfully and in strict conformity with statutory requirements, had the exclusive jurisdiction to do the thing contemplated, and the circuit court is without jurisdiction to entertain injunction. R. S. 1909, sec. 10490; Art. 3, chap. 102, R. S. 1909. (7) The temporary injunction was issued without reasonable notice. Before an injunction shall be granted to stay any proceedings, the applicant should give reasonable notice. R. S. 1909, sec. 2517; Tuttle v. Blow, 176 Mo. 172; State ex rel. v. Wear, 135 Mo. 261. Where the application is made without notice to the defendant, and the allegations of the bill are stated upon information and belief, the proceedings cannot be sustained upon the hearing in the absence of proof of their correctness. Spelling on Inj. etc. (2 Ed.), sec. 29. The verification being only on "knowledge and belief," is insufficient. Fisher v. Patton, 134 Mo. 54; Pattison's Forms for Missouri Pleading, sec. 407; Bacon's Missouri Practice, sec. 835; 2 High on Injunctions (3 Ed.), secs 1567, 1568, 1569.

There being no reasonable notice as required by the statute and the verification being insufficient, no restraining order could issue without proof of the correctness of the allegations of the petition. Spelling on Injunctions (2 Ed.), sec. 29. (8) Suppose the allegation in the petition for injunction, to the effect that the revenue for the year 1913, available for bridge purposes, is much less than the estimated cost of the bridge, is true, then, unless such shortage can be made up by transfer of other funds available for the purpose, the county court cannot lawfully draw warrants to pay for the bridge in excess of the revenue available for that purpose. If it should do so, such warrants would be void in the hands of every person who might become the holder. Sec. 12, art 10, Constitution; Thornburg v. School District, 175 Mo. 12; State ex rel. v. Neosho, 203 Mo. 40; Railroad v. Apperson, 97 Mo. 300. And certainly the taxes of the complainants could not be increased for the purpose of paying such void warrants, and they have no ground for equitable relief on this score. Hopkins v. Lovell, 47 Mo. 102; Trask v. Livingston Co., 210 Mo. 592; Polly v. Hopkins, 11 S. W. 1084.

*Frank H. Farris* and *George M. Reed* for respondents.

(1) The remedy by prohibition is only employed to restrain courts from acting in excess of their powers, and if their proceedings are within the limits of their jurisdiction prohibition will not lie. High's Extraordinary Remedies (3 Ed.), par. 767. (2) In the exercise of jurisdiction by prohibition it is important to distinguish between the nature of the action which it is sought to prohibit and the sufficiency of the cause of action as stated in the proceedings in the pending litigation. The nature of the action itself determines the jurisdiction of the court over the subject-matter, regardless of the sufficiency of its presenta-

tions or statement.  If, therefore, the action is of such a nature as to fall within the jurisdiction of an inferior court, prohibition will not lie, merely because of insufficiency in the statement of the cause of action, in pleading, or because of insufficient proof to maintain the cause of action as stated.  High's Extraordinary Remedies (3 Ed.), par. 767a, 767b, 768; State ex rel. v. Muench, 225 Mo. 226.  It may be safely asserted as settled law, and without exception, that unless the court sought to be prohibited is wanting in jurisdiction over the class of cases to which the pending case belongs, or is attempting to act in excess of its jurisdiction in a case of which it rightfully has cognizance, the writ will be denied.  State ex rel. v. Tracy, 237 Mo. 118; State ex rel. v. Mills, 231 Mo. 50; State ex rel. v. Burchartt, 87 Mo. 539; Ostman v. Frey, 148 Mo. App. 283.  (3)  Injunction may be presented to the circuit court or judge thereof in vacation.  R. S. 1909, sec. 2512.  Temporary injunction may be granted when it shall appear by the petition that the plaintiff is entitled to the relief prayed for.  R. S. 1909, sec. 2515.  (4)  Reasonable notice must be given the adverse party in such case, before an injunction can be raised.  But no such notice is required in injunction suit to restrain other acts.  R. S. 1909, secs. 2517, 2532.  (5)  The remedy by injunction shall exist to prevent the doing of any legal wrong whatever, whenever in the opinion of the court an adequate remedy cannot be afforded by an action for damages.  R. S. 1909, sec. 2534.  (6)  The court may, under a proper showing, issue an injunction without notice to the other side, and it should do so whenever it is made to appear that an act ruinous to the plaintiff's rights is contemplated and notice given to the defendant would enable him to accomplish it before the court could prevent it.  Tuttle v. Blow, 176 Mo. 171.  The only notice required by our statute of an application for injunction is, in case the injunction is sought to stay proceedings at

law. Tuttle v. Blow, 176 Mo. 172. The circuit courts may issue injunction against judges of the county court at the instance and upon application of private citizens who are taxpayers. Newmeyer v. Railroad, 52 Mo. 81; Rubey v. Spain, 54 Mo. 211; State v. Curators, 57 Mo. 178; Ranney v. Bader, 67 Mo. 479; Davis v. Hartwig, 195 Mo. 399; Blades v. Hawkins, 133 Mo. App. 328; Breimeyer v. Bottling Co., 136 Mo. App. 95; Martin v. Bennett, 139 Mo. App. 243. The county court in the exercise of its function, acts sometimes judicially and sometimes ministerially and in an administrative capacity. Its judicial acts cannot be controlled by injunction, but its ministerial or administrative acts may. The county court in determining that a bridge is necessary, and that such bridge shall be built at the expense of the county, and in what manner and of what material the same shall be built, acts in a judicial capacity, but in advertising for bids, in the letting and making of contracts for the construction of said bridge, it acts ministerially, or in an administrative capacity. The injunction proceedings involved in this cause did not seek to restrain the judges of the county court nor to control their action in determining that a bridge was necessary, or that it should be built at the expense of the county, or in what manner and of what materials it should be built, or the probable cost thereof, but it did seek to restrain them from entering into what we deem an illegal contract, and doing other unlawful things which were purely ministerial or administrative. High on Injunctions (1 Ed.), par. 793; Constitution, sec. 12, art. 10; Book v. Earl, 87 Mo. 246; Barnard v. Knox Co., 105 Mo. 389; Trask v. Livingston, 210 Mo. 582.

## STATEMENT.

A number of taxpaying and voting property-owners and citizens of Pulaski county sued the judges of the county court and the highway engineer of that

county, to restrain them from making and completing a contract for building a bridge and constructing the same across the Gasconade river to be paid for out of the revenue of the county at a cost of $8000, all of which was threatened to be done by the making and letting of a contract on the ensuing 6th day of June, 1913.

The equities set up, were that by these acts a debt would be saddled upon the county in violation of law, in that the amount of money so to be used was largely in excess of the revenues of the county under the constitutional limit and conditions prescribed for the creation of such indebtedness. [Constitution, sec. 12, art. 10.] That the defendant had failed to comply with any of the statutory conditions prescribed in the following act:

"Sec. 10490. If the county court be of the opinion that a bridge is necessary, and that such bridge shall be built at the expense of the county, said court shall determine in what manner and of what materials the same shall be built, and the probable cost thereof. It shall be the duty of the court aforesaid to require the county highway engineer to proceed to the spot where the bridge is to be built and make an accurate estimate of the cost of building the same according to any plan or plans ordered by the court and approved by the county engineer, or such as in his opinion may be best, and without delay make report thereof; and thereupon the said court shall order the county engineer to let the contract for the building of such bridge, and may also provide for keeping the same in repair for not less than two nor more than four years, to be determined by the county court." Other provisions are not material. [R. S. 1909, sec. 10490.]

The petition prays among other things that the defendants be enjoined "from making or entering into such contract themselves—for Pulaski county, and that it will enjoin and restrain the defendants, and

each of them, from contracting for Pulaski county for the erection of said bridge, from agreeing to pay for the same from the revenue of Pulaski county, from drawing any warrants on the revenue of Pulaski county to pay for the same, from setting aside or appropriating any money to pay for said bridge from the revenues of Pulaski county, and from doing any act or thing tending toward such purpose, and for general relief.''

Upon the presentation of a verified petition alleging the foregoing matter, to Hon. L. B. Woodside, he awarded a temporary injunction upon the execution of a bond for $1000, conditioned as required by law.

Thereupon an application for a writ of prohibition was made to this court, which embodied the foregoing petition for an injunction then pending in the circuit court of Pulaski county and the above order granting a temporary injunction, and alleged that the verification was insufficient and that the notice given for the application for injunction was insufficient and that the writ of injunction was awarded on an *ex parte* hearing.

The application for prohibition then denied all the grounds alleged for relief in the injunction suit, and averred that the respondent L. B. Woodside, circuit judge, had no jurisdiction to grant the same, that the time fixed by him for answering, September, 1913, was an unreasonable delay, and the lapse of time before defendant in said suit could appeal would destroy the beneficial interest of petitioner. This application was made by a voting citizen and a property owner and taxpayer who was not a defendant in the suit below. This court was pleased to grant its preliminary rule in prohibition on 8th of July, 1913.

To which respondents made return, admitting the bringing of the suit by them in the circuit court and the orders made therein, and setting out the circumstances of the notice given of the application for

temporary injunction, which were, in substance, that the circuit judge was on the point of leaving his district for a vacation, and that upon receiving notice from him of the place where the application could be heard, they at once gave notice to the defendants, who by diligence might have been present when the application was heard at Cuba, Missouri, nine o'clock a. m. June 4, 1913, at which point Judge Woodside was to take a train for his summer vacation.

Respondent L. B. Woodside made return that the acts complained of in the petition filed in his court were "ministerial acts and not judicial;" that a prima-facie case was made by the petition of violation of the Constitution and laws in this respect, and, that being possessed of jurisdiction in such cases, he deemed it his duty to grant the temporary injunction prayed. That he granted the writ after being advised by telegram that the defendants in that suit would not be present. "That upon the issuance of said temporary writ your respondent judge required that the plaintiffs therein would consent and they did consent, to the holding of a special term of court in Pulaski county within a short time, to try the issues therein raised by the injunction petition, if the defendants in said action so desired; and that your respondent informed counsel for defendants of such agreement and arrangement immediately after granting said temporary writ and that he as the judge of said court stood ready and willing and would have called and held a special term of his court in Pulaski county if the defendants in the injunction had indicated to him that they so desired."

Respondents further set up that jurisdiction of the cause by the circuit court was apparent on the face of the petition and the circuit judge was clearly within his power to act as such, in granting the temporary injunction, and denied the other statements of the application for the writ of prohibition.

To this return relator filed a reply taking issue as to the sufficiency of the notice served on the defendants of the application for writ of injunction, and stated that on account of the distance of the residence of the defendant it was not practicable for them to be present within the time left after the service of the notice.

Relator further replied that Judge Woodside had no jurisdiction to restrain the defendants in the suit before him, claiming that the matters involved there were confided to the final discretion of the county court judges.

Honorable C. C. Bland was appointed by this court to take testimony and report thereon. He reported service of the notice of the application for the temporary injunction and gave the dates when that was made upon defendants, and a conversation between Judge Woodside and Mr. Holmes, counsel for defendants, who had arrived a few moments after the granting of the writ, and who was told by Judge Woodside (then about to take a train for St. Louis) that plaintiff's counsel had agreed to appear at a special term to try the case and that he "would call such term in a week or two if the parties would then try it," and that Mr. Holmes made no reply to this proposition, not having time to consider it, before the judge took the train.

The commissioner also reported that certain exhibits referring to the proceeding of the county court in the bridge matter, were correctly copied from the record of that court in the exhibits to relator's application for prohibition; that no evidence *pro* or *con* was offered, as to the recitals in these proceedings as to the moneys on hand or estimated for collection for bridge building. He further found that the highway engineer had visited the spot of the proposed bridge and inspected it and estimated the cost at $8000. The commissioner then made a separate finding as to the

law of the case in which he held that the circuit court had no jurisdiction of the suit before it, for that the Legislature had given "sole and exclusive control and jurisdiction over the subject of building bridges," in the absence of fraud or bad faith, to the county court.

Respondent Woodside filed a written protest to the taking of any evidence by the commissioner and he and the other respondents excepted to each item of the evidence admitted by the commissioner and to his respective findings thereon and to his report *in toto* and to his legal conclusions. The general grounds of these exceptions were: first, that the evidence was not receivable, because it related only to matters which might have been set up as a defense on the trial of the issues of the injunction suit pending in the circuit court; second, that as to his report of the law, he had misconceived that and also misapprehended the issues and gave specific reason for these exceptions.

The case is now before us after argument on the qustions presented.

## OPINION.

BOND, J. (After stating the facts as above).—
I. We leave out of view the contentions of relator, that jurisdiction in the sense of power to

Jurisdiction:
Injunction:
Notice.

act, on the part of the respondent circuit judge, as to the grant of a preliminary injunction, was *conditioned* upon a showing of previous notice of the application therefor, given to the defendant. Such is not the law, and no support for that view can be found either in the general principles of equitable jurisprudence or in the statutes of this State.

The statute of this State provides that before the issuance of an injunction to stay "any proceedings" "reasonable notice in writing" by the applicant shall be given to the adverse party or his agent in this State,

or if neither is within the State, by putting up such notice for ten days in the office of the clerk of the circuit court where the suit is filed. [R. S. 1909, secs. 2517, 2518.] The case brought here by the relator was not one to stay any suit or judgment or judicial proceedings, and therefore does not fall within the purview of the statutory rules. It is, however, proper in ordinary cases asking for injunctive relief other than the staying of legal proceedings, that notice should be given of the application for the writ. But there may be extraordinary cases of that character, in which the giving of such notice would defeat the only purpose of the action; hence, equity has never prescribed it as a condition precedent in all cases to the grant of a temporary injunction. [R. S. 1909, sec. 2532; Tuttle v. Blow, 176 Mo. l. c. 171; Lewton v. Hower, 18 Fla. 872.]

The jurisdiction of the circuit court of the case made by the petition was not dependent upon the fact of previous notice to the defendant of the motion for temporary injunction. But before leaving that matter we desire to say that in the case at bar the record discloses nothing unjudicial on the part of the circuit judge in granting the writ, since it appears that notice was given as soon as plaintiffs were apprised of the place and time fixed for the hearing, and while the time was necessarily shortened to accord with the departure of the judge it was also shown that he acted in an emergent matter and upon the understanding that the defendants would not appear and after requiring an agreement from plaintiffs to try the case at a special term of court which he would convene if defendants desired.

This was commendable conduct on the part of the judge and tended to conserve all the rights of the defendants. [R. S. 1909, sec. 2532.]

II. The question decisive of this case is, whether the petition for injunction presented a case of which the circuit court in the exercise of its equitable powers

could take cognizance and grant relief? For it has been seen that there was no lack of power to grant the temporary writ, if the circuit court was possessed of jurisdiction of the subject-matter of the action.

This the relator denies on the theory that the section of the statute quoted in the statement and other sections of the article headed "Bridges," confide the whole matter of contracting for and building bridges to the unreviewable expression of the county court. We cannot agree to that view of the law. The statute in terms vests the county court with authority to decide to build a bridge. That power is given by its first sentence, to-wit: "If the county court be of the *opinion* that a bridge is necessary, and that such bridge shall be built at the expense of the county, said court shall determine in what manner and of what materials the same shall be built, and the probable cause thereof." The succeeding portion of the section and other sections following it, charged the county court with the duty of requiring the county engineer to view the location and report the cost of the contemplated bridge and thereafter to advertise the letting of the contract, which shall be subject to the approval or the rejection of the county court, and which contract the county court is forbidden to approve if "made in any other manner than is provided for by this article." [R. S. 1909, sec. 10495.] These sections further provide that the county court has no power to pay the expense of bridge building out of any revenue later than the year of the contract and in using these it has no power to exceed the constitutional limit. [R. S. 1909, sec. 10496; Constitution of Missouri, art. 10, sec. 12; Trask v. County, 210 Mo. 582; Book v. Earl, 87 Mo. 246; Decker v. Diemer, 229 Mo. 1. c. 331.]

From this enumeration of the powers and duties of the county court as set forth in the Revised Statutes 1909, secs. 10486-10504 inclusive, it is evident that

in dealing with the subject of bridge building the county court exercises two distinct and separate functions. As to the matter of determining the necessity for a bridge, the guardians of the interest of the county are clothed with full powers of decision. For no bridge could be lawfully built at the expense of the county unless the county court had first adjudged it to be necessary, and no superior judicial tribunal is authorized to restrain or coerce the county court in rendering its *opinion* on that particular matter, for to that extent its action is purely discretionary under the powers given to it by the language of the statute. [State ex rel. v. Thomas, 183 Mo. 220.]

But as to the power to contract for the work of building the bridge and to cause contracts to be let for that purpose and to pay for the work—in all these respects—the county court is only vested with power to act administratively and in subordination to the Constitution and statutes regulating its action and proceedings in such matters. As to these duties, the county court is not possessed of uncontrollable power or authority to act in disregard of the Constitution and laws and without being subject to any restraint or review of its action by courts of competent jurisdiction. All such acts and doings, if not wholly ministerial, are yet discretionary *sub modo*, and necessarily therefore may be restricted to the limits and conditions fixed for their exercise by the Constitution and the statutes. This essential distinction between the nature of the acts of the county court is overlooked in the contention of the relator. The present suit in equity was not brought to prevent the judgment and determination of the county court to build a bridge, but it was brought to prevent the enforcement of that decision by the making and letting of unconstitutional contracts on behalf of the county and by disregarding the specific statutory prerequisites to such contracts.

The allegations of the petition present this view

in clear and explicit terms and they furnish in this case the correct criterion of the jurisdiction of the lower court when attacked by prohibition. [High on Extra. Rem. (3 Ed.), 767B; State ex rel. v. Tracy, 237 Mo. l. c. 118-121; State ex rel. v. Muench, 225 Mo. l. c. 226.]

The power of a court of equity to enjoin a contract or a construction of a bridge in contravention of the Constitution and statutes is ample under equity jurisprudence as well as the statutes and laws of this State. [R. S. 1909, sec. 2534 et seq.; State v. Curators, 57 Mo. 178; Newmeyer v. Railroad, 52 Mo. 81; Davis v. Hartwig, 195 Mo. l. c. 399; Crampton v. Zabriskie, 101 U. S. 601.]

The cases relied on by relator do not support his contention. As far as they are in point they simply announce the doctrine that in the exercise of its "judicial function," the county court cannot be controlled or interfered with by other courts; but none of them sustain the proposition that in the performance of such ministerial act as befits the agent of the people in constructing bridges for their benefit they are exempted from compliance with the Constitution or statute regulating these duties, or free from the control of courts of equity at the instance of the taxpaying citizens of the county. In other words, if the *regulatory* provisions of the Constitution and statutes are binding upon the judges of the county court, then they are not vested with limitless power in the matter of letting contracts and using the money of the county to pay for building bridges, and this being conceded it necessarily follows that a court of equity is the proper forum to give preventive relief.

We think that Judge Woodside was possessed of jurisdiction to try the case made by the petition filed in the circuit court of Pulaski county, and that the writ of prohibition was improvidently granted. It is therefore quashed. All concur.