A. T. DUMM and W. C. IRWIN v. COLE COUNTY, H. B. BODE ET AL., Appellants.

Division One, July 30, 1926.

1. **QUIETING TITLE: Action at Law: Ancillary Injunction.** A suit to quiet title to land, based upon an allegation of ownership of such land as being an accretion to other land of the plaintiff, to which no equitable defense is tendered by the defense, is an action at law; and an injunction in aid of the action, issued in behalf of plaintiff, who is in possession, and for the purpose of maintaining the status and preventing a sale or transfer until the legal title is determined, does not convert the legal action into a suit in equity, but is merely ancillary to the main purpose of the action.

2. **ACTION AT LAW: Appellate Practice: Substantial Evidence.** In an action at law, tried by the court sitting as a jury, the judgment, if supported by substantial evidence, will be affirmed on appeal, where no instructions were asked or given, and no reversible error in the admission or rejection of evidence was committed. The issue tried being whether the lands in suit were accretions to the lands of plaintiff, or formed as an independent island in the navigable river, and the evidence on that issue conflicting the trial court found the issue in favor of plaintiffs, and that finding being supported by substantial evidence, the issue will not be re-

tried on appeal, but there being no procedural errors the judgment is conclusive of the issue.

**3. ACCRETIONS: Ownership.** Made land, if an accretion to an island owned by plaintiffs, belongs to them.

**4. ———: Towhead.** If the made land formed about a towhead in the navigable river, thus forming an island, the fact that it gradually extended to the lines of plaintiffs' land did not make it their property, but made it the property of the county, and as such subject to sale for the benefit of the public schools. In such case each owner would own to the line of accretion contact.

**5. ———: Slough: Above Low Watermark.** The Government constructed a dike near the head of plaintiffs' island, which turned the river water and caused a sand bar to begin to form, which built up against the shore line at the head of the island and in time extended around and beyond the lower end of the island. Subsequent rises in the river caused a drift to form on the outer rim of this sand bar, and the rim became higher than the land intervening between it and the high land of the island, and between the rim and the high land was what was called a slough. The bed of the slough was eight feet above the low watermark of the river, and when the river waters reached a stage eight feet above low watermark a shallow current ran through the slough, but otherwise it was a dry slough. **Held**, that the continuity of the accretion to the island was not broken by the slough, and the sand bar was not a separate island disconnected from the shore line of plaintiffs' island.

**6. INJUNCTION: In Aid of Action at Law: Notice.** The county court had ordered the sheriff to sell nine tracts of land on the theory that they were islands in the Missouri River and belonged to the county, and the sheriff had advertised the tracts for sale. Plaintiffs were in possession and claimed the land was an accretion to an island which the county nine years previously had conveyed to their grantor, and therefore belonged to them; and on the day the sale was to be made, filed their petition in the circuit court to quiet the title, naming the county, the judges of the county court and the sheriff as defendants, and asking that an injunction issue to restrain the sale until the title could be determined, alleging that a sale would cast a cloud upon their title and cause a multiplicity of suits. The plaintiffs gave bond, and the injunction issued without notice to defendants, who filed answer and a motion to dissolve the injunction, but the motion was never considered, and the cause proceeded to trial upon the one issue whether the lands were accretions to plaintiffs' island or a separate island and belonged to the county. On that issue the court, sitting as a jury, rendered judgment for plaintiffs, and on appeal defendants contend that the issuance of the injunction without notice was a violation of the statute (Sec. 1952, R. S. 1919). **Held**, that the injunction did not stay a judgment, or a judicial proceeding, and did not interfere with the judicial functions of the county court, and in such circumstances the statute does not compel previous notice. The county court is vested with an administrative discretion to determine the expediency of a sale of land belonging to the county, but has no judicial power to determine title to land, but the circuit court alone has that power, and in aid of the action at law to determine the title could issue an injunction to stay a sale or any change in the status which might interfere with the final adjustment of the title, just as it could between any other adverse claimants to the land.

**7. ACCRETIONS: Limited to Fixed Boundaries: To Low Watermark.** The county in conveying an island in a navigable river may, by describing it by fixed metes and bounds and limiting ownership to the lands described, exclude the grantee and subsequent purchasers from claiming any accretion thereto. But where the conveyance described the island as "bounded on the

northerly side by the main channel of the Missouri River and on the souther-
ly side by a slough separating it from the main land, and more particularly
described" by metes and bounds, and the oral evidence shows that that de-
scription by boundary was a description of the island as it then was, to the
low water's edge, the owner of the island is entitled to claim to low water's
edge, and to any accretion subsequently added to the island.

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 2853,
p. 878, n. 82; Section 2854, p. 881, n. 13. **Counties,** 15 C. J., Section 92,
p. 445, n. 55; p. 447, n. 75; Section 104, p. 458, n. 76, 84 New; Section 224, p.
538, n. 41. **Ejectment,** 19 C. J., Section 48, p. 1067, n. 1. **Injunctions,** 32
C. J., Section 65, p. 80, n. 18, 19; Section 162, p. 125, n. 91; Section 164,
p. 126, n. 3; Section 169, p. 127, n. 15; p. 128, n. 16, 17. **Navigable Waters,**
29 Cyc., p. 349, n. 78; p. 350, n. 80; p. 351, n. 86; p. 352, n. 91; p. 354,
n. 6, 10. **Public Lands,** 32 Cyc., p. 876, n. 47. **Quieting Title,** 32 Cyc., p.
1305, n. 1; p. 1308, n. 17; p. 1313, n. 46 New.

Appeal from Cole Circuit Court.—*Hon. Henry J. Westhues,* Judge.

AFFIRMED.

*N. G. Sevier* and *T. S. Mosby* for appellants.

(1) Being a suit in equity, this case is here *de novo* on the facts,
and this court is bound to sift and weigh the whole evidence and de-
termine what the findings of the trial court should have been upon
such evidence as was competent and proper. Miller v. McCaleb, 208
Mo. 575; Patterson v. Patterson, 200 Mo. 335; Turner v. Overall, 172
Mo. 287; Lins v. Lenhardt, 127 Mo. 280; Walther v. Null, 233 Mo.
104; McClure v. Bank, 263 Mo. 141; Troll v. Spencer, 238 Mo. 81;
Rice v. Shipley, 159 Mo. 405; Sheridan v. Nation, 159 Mo. 41;
Daudt v. Steiert, 205 S. W. 225; Davies v. Keiser, 246 S. W. 900; 4
C. J. 726, 660, 661. (2) The plaintiffs had an adequate remedy at
law by suit in ejectment, and therefore injunction will not lie. Buse
v. Russell, 86 Mo. 209; Minton v. Stele, 125 Mo. 181; Black v. Jack-
son, 177 U. S. 349; 5 Pomeroy, Eq. Rem. p. 4359; 1 High on Injunc-
tions (4 Ed.) secs. 28, 29 and 325. (3) It was error to issue the
injunction in this case without any notice to the defendants, the in-
junction being one to stay proceedings. Sec. 1952, R. S. 1919; State
ex rel. v. Deering, 291 Mo. 169; Mills v. Prov. Life Co., 100 Fed. 344;
32 Cyc. 408. (4) If part of plaintiffs' land washed away, and
afterwards re-formed as a sand bar and gradually extended toward
plaintiffs' shore line until it united therewith, the accretion was to
the new island and not to the plaintiffs' shore line. Frank v. Goddin,
193 Mo. 390; Naylor v. Cox, 114 Mo. 232; Cox v. Arnold, 129 Mo.
337; Chinn v. Naylor, 182 Mo. 583; DeLassus v. Faherty, 164 Mo. 361;
Cooley v. Golden, 117 Mo. 33; McBaine v. Johnson, 155 Mo. 191;
Moore v. Farmer, 156 Mo. 47; Widdecombe v. Chiles, 173 Mo. 195;
State ex rel. v. Longfellow, 169 Mo. 109. (5) The owner of con-
tiguous land is not the owner of a sand bar or towhead which

forms in the river, becomes an island, and afterwards joins his land. Cooley v. Golden, 117 Mo. 33; Naylor v. Cox, 114 Mo. 232; Cox v. Arnold, 129 Mo. 327; Moore v. Farmer, 156 Mo. 33; Hahn v. Dawson, 134 Mo. 581; Perkins v. Adams, 132 Mo. 131; Benson v. Morrow, 61 Mo. 351. (6) If the slough filled up from the sides, each owner is entitled to his accretions, but if it filled from the bottom the original center line is the property line. Buse v. Russell, 86 Mo. 209; Minton v. Steele, 125 Mo. 181. (7) The right of alluvion depends upon the actual contiguity with the water front, and cannot be claimed by one whose land is separated therefrom by a well-defined slough or arm of a stream. Crandall v. Smith, 134 Mo. 633. (8) Where the shore lines of two tracts of land, divided by a watercourse, receive accretions until they come together, the line of contact will be the division line. Buse v. Russell, 86 Mo. 214. (9) Riparian landowners own only to the water's edge at low watermark. Naylor v. Cox, 114 Mo. 232; Crandall v. Allen, 118 Mo. 403; Cooley v. Golden, 117 Mo. 33; Rees v. McDaniel, 115 Mo. 145; Railroad v. Stock Yards, 120 Mo. 541; Buse v. Russell, 86 Mo. 209; Benson v. Morrow, 61 Mo. 345; State ex rel. v. Longfellow, 169 Mo. 109; Moore v. Farmer, 156 Mo. 33. (10) The right of alluvion does not apply to lands which are *agri limitai*, having fixed meets and bounds without reference to the water's edge. Smith v. St. Louis, 30 Mo. 290; Sweringen v. St. Louis, 151 Mo. 255; Ellinger v. Mo. Pac. Ry. Co., 112 Mo. 525; Benson v. Morrow, 61 Mo. 345; Buse v. Russell, 86 Mo. 209; Frank v. Goddin, 193 Mo. 398; St. Louis v. Lemp, 93 Mo. 477.

*A. T. Dumm* and *W. C. Irwin* for respondents.

The suit is not one to stay "a court proceeding," but the injunction asked was ancillary to the suit to determine title; hence, no notice for injunction was necessary. State ex rel. v. Woodside, 254 Mo. 591.

LINDSAY, C.—The plaintiffs in their petition alleged that they were the owners of and in possession of certain lands in Cole County, and that Cole County claimed to own the same or some interest therein, and the petition set forth the nature of that claim. Plaintiffs asked for ascertainment and determination of title, and that title be adjudged in them as against defendants, and asked also that a proposed sale of the land by defendants for Cole County be restrained pending the determination of title. The petition describes nine parcels of land, but they form a contiguous body.

The claim of plaintiffs, as stated in their petition is, that the said lands in suit had accreted to other lands owned by plaintiffs. The land of plaintiffs to which it was claimed the land in suit had accreted, was spoken of as "Grider Island," in the Missouri River. The claim made for Cole County is that the land in suit is an island

formed in said river, and not an accretion to plaintiffs' land, and is the property of Cole County for school purposes, under the provisions of Article VI, Chapter 56, Revised Statutes 1919; Laws of Missouri, 1895, page 207. The petition was filed on June 20, 1923, and after setting out the ownership and respective claims, it alleged that the defendants constituting the county court had ordered and caused to be advertised said lands for sale, and had directed defendant Gretlein as sheriff, to sell the same, and he had advertised the same for sale on said 20th day of June, 1923, to the highest bidder; that if said lands were sold the county court would proceed to cause deeds to be executed and delivered to purchasers; that such deed or deeds would be a cloud upon plaintiffs' title; that if the land was sold in parcels to more than one individual it would cause a multiplicity of suits in order to try and determine the title of plaintiffs; and plaintiffs asked that said sheriff, and the other defendants, be required to show cause why they should not be restrained from selling said lands, or from proceeding to cause their sale, and the delivery of deeds to the purchasers, until the title thereto should have been finally determined; and asked, that upon full hearing, defendant county court be permanently enjoined from causing said lands to be sold and conveyed.

The circuit court granted a temporary injunction restraining defendants from proceeding with the said sale until the further order of the court, and requiring them to show cause on or before July 2, 1923, why such order should not be made permanent. A bond was required of plaintiffs upon the issuance of the temporary injunction.

On July 2, 1923, defendants filed answers wherein they denied the plaintiffs' ownership and possession of the lands, denied that said lands had accreted to lands owned by plaintiffs, and alleged that said lands by being islands formed in the Missouri River, a navigable stream, belonged absolutely to Cole County under the provisions of the acts of Congress and the laws of Missouri. They further denied that the sale of said lands by defendants would cause a multiplicity of suits, and asked that title thereto be adjudged to be in Cole County. Also, on July 2, 1923, the defendants filed their motion asking that the temporary injunction be dissolved. This motion was not taken up nor acted upon by the court. The cause came on for trial on October 1, 1923, and was submitted to the court upon the evidence. Under the announcements made by the respective counsel as shown by the record there was a waiver of a jury. The court found and declared that plaintiffs were the owners of said lands and that Cole County had no right, title or interest therein, and permanently enjoined defendants from selling said lands. Upon the hearing, the sole issue was whether the lands in suit had accreted to other lands concededly owned by plaintiffs, or, whether the land constituted an independent island, formed in the Missouri River. No demurrer to the evidence

was filed. There was no special finding of facts made, nor request therefor. No declarations of law were asked, and none was given.

The evidence for plaintiffs was that in 1914, Cole County conveyed to one W. D. Patterson the land known as Grider Island, containing, according to the survey, 601.79 acres. It was admitted that not long thereafter plaintiffs acquired the title of Patterson to said lands, and entered into possession of the same. The land consisted of between three and four hundred acres of high land upon which grew large trees, and of between two and three hundred acres of bar land covered with willows.

In the year 1915 there was high water, which cut away a considerable part of the bar land on the east and south parts of the tract. After that, in the years 1916 and 1917, the Government constructed a dike near the head of Grider Island, which turned the water from the island, and toward the Callaway County side of the river. Plaintiffs' evidence tended to show that as a result of the dike, a sand bar started at the head of the island, and was extended along the easterly end and around upon the south side of the island, and that this sand bar built up and extended from the shore line. Plaintiffs' evidence further tended to show that subsequent rises of the water in the river caused a drift to form on the outer rim of the sand bar, which built up the outer rim of the bar higher than some of the land intervening between the outer rim of the bar and the high land of the island. There was what was spoken of as a slough between the outer rim of the sand bar and the high land of Grider Island.

Plaintiff's evidence was that the bed of this slough was eight feet above the low watermark of the river, and that when the river reached the stage eight feet above low watermark, there would be a shallow current running through this slough, and that otherwise it was a dry slough.

Defendants introduced evidence tending to show that the sand bar in question formed about a towhead in the channel, as a formation independent of the land owned by plaintiffs.

Plaintiffs' evidence on the other hand tended to show that the so-called towhead was formed on the sand bar at a considerable time after the sand bar, which has been described, had appeared above the surface of the water and that there was no independent towhead in the channel of the stream. Plaintiffs' contention was, and their evidence tended to show, that the bar land which was cut away in 1915 was restored as the result of the dike constructed by the Government, through accretion to the shore, and that the boundaries of the land at the present time conform to the boundaries at the time the land was sold to Patterson.

Counsel for the county have briefed the case on the theory that this is a suit in equity, and that we must review and weigh the evidence and draw our own conclusions therefrom.

To our mind this is an action at law to ascertain and determine title, and the injunctive action of the court was invoked merely to maintain the status of the parties pending determination of the question of the legal title to the land. The primary and the ultimate purpose of the suit was to have the court ascertain, determine and adjudge the title and estate of the parties respectively to the lands in controversy. Upon that question the pleadings raised no equitable issue. The case as stated for plaintiffs and as made by the evidence, depended upon the determination of the single question of fact whether the land sued for had accreted to other lands concededly owned by plaintiffs, and the answer raised no equitable defense, and set up no claim of ownership by the county except the claim of formation of an island. An action to quiet title to land, based on the allegation of ownership of such land as being an accretion to other land of the plaintiff, is an action at law, where no equitable issue as to ownership is tendered by the defense. [Lee v. Conran, 213 Mo. 404; Cullen v. Atchison County, 268 S. W. 93.]

The injunction asked and granted was merely ancillary to the real purpose of the suit, and contemplated no other purpose and served no other purpose than to maintain an existing status until the court could determine the question as to where lay the legal title. Upon the question of concrete physical fact as to whether the land in suit had accreted to the lands of plaintiffs, as they claimed, or, on the other hand, formed an independent island, as the defendants claimed, the evidence is conflicting. Clearly, under the testimony in the record, we cannot say, as a matter of law, after reading this record, there is no substantial evidence to sustain the finding of the court. This being an action at law, tried by the court sitting as a jury, without instructions asked or given, and the judgment being sustained by substantial evidence, and no reversible error appearing to have been committed in the admission or rejection of evidence, the finding is conclusive upon us. [In re Lankford's Estate, 272 Mo. 1; Case v. Sipes, 280 Mo. 110; Wiley v. Harlow, 274 Mo. 170; Cullen v. Atchison County, 268 S. W. 93.]

Counsel for Cole County in their brief have collated the decisions of this court stating the rules governing in cases of contested ownership, involving the question of title to lands through accretion. It is not necessary to discuss these. Under the rulings therein made, the land in suit, if an accretion to the land owned by plaintiffs, became the property of plaintiffs. [Frank v. Goddin, 193 Mo. 390; Naylor v. Cox, 114 Mo. 232; Cox v. Arnold, 129 Mo. 337; Chinn v. Naylor, 182 Mo. 583; DeLassus v. Faherty, 164 Mo. 361; Cooley

v. Golden, 117 Mo. 33; McBaine v. Johnson, 155 Mo. 191; Moore
v. Farmer, 156 Mo. 47; Widdecombe v. Chiles, 173 Mo. 195; State
ex rel. v. Longfellow, 169 Mo. 109.]

By the same authorities, if the land in suit was land formed
about a towhead in the river, thus forming an island as claimed
by defendants, the fact that it gradually extended to the lines of
plaintiffs' land did not make it the property of plaintiffs, but it was
the property of Cole County, and as such, subject to disposition for
the benefit of the public schools. In such case each owner would
own to the line of accretion contact.

In announcing the conclusions reached, we have given consideration
to what was said in Crandall v. Smith, 134 Mo. 633. The facts,
as shown here, are materially different from those stated in the
opinion in that case. In that case the slough was described as having
water deep enough for navigation purposes at certain seasons of
the year.

It is urged that plaintiffs had an adequate remedy at law, by
suit in ejectment; therefore injunction will not lie. As to this con-
tention, it may be said that plaintiffs' evidence tended to show they
were in possession, and, as we have already held, their suit was one
at law, and injunction asked was merely a relief auxiliary to the
essential purpose of the suit.

It is urged, also, that it was error to issue the injunction without
notice to the defendants, and this upon the ground that the injunc-
tion was one to stay proceedings, and therefore its issuance was
a violation of Section 1952, Revised Statutes 1919. As has been
stated already, the motion to dissolve the temporary injunction was
never taken up, but the cause proceeded to trial upon the merits of
the respective claims of the parties, to the legal title to the land.

Upon this point our attention is called to State ex rel. Caron v.
Dearing, 291 Mo. 169, wherein a writ of prohibition was granted
against the respondent. There, without notice, and without the
giving of a bond, an injunction had been granted a railroad company
to suppress what was alleged to be a public nuisance, in hauling
and depositing garbage. That suit was not such a suit as is defined
by Section 1952, and it was so held, and the writ of prohibition was
granted for the reason that the facts showed an arbitrary and
excessive use of jurisdiction on the part of the court granting the
injunction, since, it was held, there was no such emergency shown
as required summary determination of the right of the railroad
company to transport and deposit the garbage, which, it was alleged
caused the nuisance. For the action of the court in granting the
injunction in that case, it was held that the defendant in that suit
had no adequate remedy either by appeal, or otherwise. The case
here falls within the ruling made in State ex rel. McMillan v. Wood-

side, 254 Mo. 580. In that case a writ of prohibition was asked against the circuit court which had granted a preliminary injunction against a county court restraining the county court from proceeding to accept bids and let a contract for the building of a bridge. It was held that while the county court had full power to determine the necessity for building a bridge, and in that matter its determination was discretionary and not reviewable, yet in letting a contract, for the expenditure of money, it was discharging a different and distinct function, and was acting in an administrative capacity. The county court is a court of record and in acting upon matters within its discretion, it exercises judicial functions. In this case Cole County stood in, or attempted to assume, the relation of an owner, or proprietor. The county court acted as for an owner. If the land in suit was property held by Cole County, the determination of the county court that it was expedient to sell it in the manner and for the purpose provided by the statute, was a matter within the discretion and power of that court. The restraint of the act of selling and conveying the lands, under the circumstances alleged and shown, was not a restraint upon the power of the court to determine that it was expedient to sell and convey the lands, but was a restraint upon the proposed exercise of a purely proprietary function. The title, and the right of the court to sell at all, was in dispute, and that question could not be determined by the county court. That was a question to be settled by the court having jurisdiction of the subject-matter and of the parties. The temporary injunction therefore was not an interference with the exercise of a judicial function, but only an interference with the exercise of a claimed proprietary right, pending the determination of the question whether such asserted right existed. The injunction did not stay a judgment, nor a judicial proceeding, but only stayed the doing of a ministerial or administrative act of the county court pending the determination of the question whether the county owned the property, the subject of the proposed act. It was the restraint of a litigant, and not a stay of any proceedings, as that term is used in the statute.

In 32 Corpus Juris, page 127, the rule is stated as follows: "Where the main suit is pending in equity, the court, as ancillary thereto, will grant an injunction to prevent the sale, transfer, or any change in the status of the property which will interfere with the equitable adjustment of the rights of the parties upon final decree. Also, pending an action at law, an injunction will be granted against a sale or disposition of the property in controversy where it is necessary to prevent irreparable injury, or a multiplicity of suits."

In Smith v. Jameson, 91 Mo. 13, which was an original and independent suit in equity wherein injunction was asked, it was held that injunction will not lie as an original and independent proceeding to determine the title to land in possession of the defendant. But it was said, l. c. 19: "In a case like the present, an action of ejectment would be an appropriate remedy, to test the right and to try the title to the 'disputed strip' and 'mines' in question, and in such action, and as auxiliary thereto, if the facts warranted it, and under proper averments, an injunction, *pendente lite*, might be appropriate and amply secure all the rights of the plaintiff in the premises."

In the case at bar the allegation was that plaintiffs were in possession, and their evidence tended so to show. In this case, as appears from what already has been said, the land in question was advertised for sale in nine several parcels. The sale was to take place on the day in which the petition was filed. The plaintiffs were required to give and did give a bond as a condition of the granting of the injunction. "On an application for a preliminary injunction, the court, in the exercise of its discretionary powers, will consider what is commonly described as the balance of convenience, that is to say, it will consider whether a greater injury would be done by granting an injunction than would result from a refusal thereof. If it is shown that the refusal of the injunction would cause complainant great inconvenience and injury, and that the granting thereof would result in but little injury or inconvenience to the defendant, the court will ordinarily grant the injunction, although complainant's right may be doubtful or not clearly established." [32 C. J. pp. 79-80.]

There is also the contention made for defendants that the plaintiffs' lands were *agri limitati*, and therefore not entitled to the right of alluvion within the ruling in Smith v. St. Louis Public Schools, 30 Mo. 290, and later decisions following that ruling. The contention made is upon the basis that the land conveyed by Cole County to Patterson, and by him to plaintiff, had fixed metes and bounds without reference to the water's edge. The evidence shows that prior to the sale and conveyance of the land to Patterson, the land was surveyed. The land conveyed was described by metes and bounds as shown in that survey, but the evidence also is that the survey of the land was made as a survey to the low water's edge.

The deed from Cole County to Patterson described the land as being known as "Grider Island" and as "bounded on the northerly side by the main channel of the Missouri River and on the southerly side by a slough separating it from the main land, and more particularly described," etc. Then followed description by boundary, which the oral evidence showed was a description of the land as it then was, to the low water's edge.

315 Mo.—37.

In Frank v. Goddin, 193 Mo. 390, the rights of riparian landowners, as affected by accretion or reliction, were discussed extensively in the opinion written by LAMM, J., and the doctrine, and the cases dealing with the particular subject now under consideration, were also discussed. That case, in many respects, resembles the case at bar. Upon the question of the effect of the conveyance involved in that case, it was said, at page 397: "It may be conceded to appellant that a grantor might convey his upland by such boundaries, calls and immutable lines and description as would result in a reservation to the grantor of appurtenant flat lands and their present or subsequently accreted alluvion." The substance of the evidence, theretofore, stated somewhat particularly, is restated, and the conclusions reached therefrom, given, l. c. 398: "We conceive that appellant's learned counsel has fallen into the error of assuming that Goddin's land is *ager limitatus.* To our mind, the grant was not that of a field limited by fixed and arbitrary boundaries. To the contrary, his petition, survey and patent, read together and fairly construed, referred and related to an *island,* as such, with the river for a boundary. It is true that in the diagram of the surveyor the survey is surrounded by earmarks indicating sand bars. But the oral evidence of the surveyor shows that the survey was intended to be made and was made substantially to the water's edge and that the river was the boundary. In this condition of things new land thereafter formed to said island on either side by recession or accretion, under settled rules of law as applied in the cases heretofore cited, inured to the benefit of the island owner, and we accordingly so hold." The evidence here is so far similar to that in the case referred to upon the immediate question, as to call for a like conclusion.

From what has been said, it results that the judgment herein should be affirmed. *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur, except, *Graves,* J., absent.